CHAD A. READLER
Acting Assistant Attorney General

STEVEN W. MYHRE
Acting United States Attorney
District of Nevada

TROY K. FLAKE
Assistant United States Attorney
501 Las Vegas Boulevard, South, Suite 1100
Las Vegas, Nevada 89101
Telephone: 702-388-6336
E-mail: *troy.flake@usdoj.gov*

RUTH A. HARVEY
MICHAEL J. QUINN
JOHN R. KRESSE
DAVID H. DeCELLES
U.S. Department of Justice, Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone:  (202) 616-2238
E-mail: *john.kresse@usdoj.gov*

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| COUNTY OF CLARK and NEVADA LINKS, INC., | |
| Defendants. | |

1. The Court has jurisdiction under 28 U.S.C. § 1345, because the United States of America is the plaintiff.

2. The United States brings this Complaint against the County of Clark (the "County"), a political subdivision of the State of Nevada, and Nevada Links, Inc. ("Nevada

1

Links"), a Nevada corporation that owns and operates the Bali Hai Golf Club in Las Vegas, Nevada. The Complaint asserts claims for breach of a deed covenant, breach of contract, breach of fiduciary duty, and declaratory judgment.

3. The claims arise from the County's lease of approximately 91 acres of land to Nevada Links that the United States previously transferred to the County under the Southern Nevada Public Land Management Act of 1998, Pub. L. No. 105-263, 112 Stat. 2343 (1998) (the "Act"). Both the Act and the deed conveying the land expressly required the County to lease the land at fair market value and to distribute 85 percent of the proceeds to the United States to be used for various environmental and conservation purposes in Nevada. The County also agreed with the United States in a related Memorandum of Agreement that the County would lease land transferred under the Act for no less than its appraised fair market value. Instead, without obtaining an appraisal to determine the fair market rent, the County leased the land to Nevada Links for an annual fixed rent of $100,000—less than 5 percent of fair market value.

4. The County's failure to obtain fair market value for the lease has caused the United States tens of millions of dollars in damages in the form of past and future underpayment of rent.

**Venue**

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred here, and a substantial part of the property that is the subject of this action is situated here.

6. Venue in this district also is proper under 28 U.S.C. § 1391(b)(1), because all defendants are subject to personal jurisdiction in this district.

**Parties**

7. The County is a political subdivision of the State of Nevada. Nevada has waived the County's sovereign immunity from suit. Nev. Rev. Stat. § 41.031.

8. Nevada Links is a Nevada corporation. Nevada Links owns and operates the Bali Hai Golf Club in Las Vegas, Nevada.

**The Southern Nevada Public Land Management Act**

9. The County's duties at issue originated in 1999 with its acceptance of title to approximately 5,000 acres of vacant public land located near McCarran International Airport in Las Vegas (the "Airport").

10. Before then, the United States Department of the Interior's Bureau of Land Management ("BLM") administered this public land underneath primary airspace for aircraft departing the Airport. To help coordinate use of this land to be compatible with the adjacent Airport, BLM and the County entered an Interim Cooperative Management Agreement in November 1992.

11. On October 19, 1998, however, Congress enacted the Southern Nevada Public Land Management Act. The Act authorized the transfer of the public land to the County and imposed certain obligations on the County if it accepted title.

12. Section 4(g) of the Act provides that "[u]pon request of Clark County, Nevada, the Secretary [of the Interior] shall transfer to Clark County, Nevada, without consideration, all right, title, and interest of the United States in and to the lands identified in the [Interim Cooperative Management] Agreement, subject to" various requirements for the County's use and disposition of land transferred to it ("Section 4(g) Land"). Act § 4(g).

13. Among other requirements, "Clark County agrees that if any of such lands are sold, leased, or otherwise conveyed by Clark County, such lands shall be sold, leased, or otherwise conveyed for fair market value." Act § 4(g)(4).

14. Further, the County must "contribute 85 percent of the gross proceeds from the sale, lease, or other conveyance of such lands" to a Department of Treasury account, with five percent of the proceeds payable to Nevada "for use in the general education program of the State," and the remaining ten percent "available for use by the Clark County Department of Aviation for the benefit of airport development and the Noise Compatibility Program." *Id*.

15. The Act generally directs the Secretary of the Interior to use the United States' share of proceeds from the sale, lease, or other conveyance of lands for various public purposes, including the acquisition of environmentally sensitive lands in Nevada, capital improvements at

conservation and recreation areas in Nevada, the development of a multispecies habitat conservation plan in the County, and the development of parks, trails, and natural areas in the County. *Id.* §§ 4(g)(4), 4(e)(3)(A).

16. Alternatively, if land transferred to the County under section 4(g) of the Act is identified on the map referenced in section 2(a) of the Santini-Burton Act, Pub. L. No. 96-586, 94 Stat. 3381 (1980), the Act requires the Secretary of Agriculture to use the United States' share of proceeds from the sale, lease, or other conveyance of such land "to acquire environmentally sensitive land in the Lake Tahoe Basin, pursuant to section 3 of the Santini-Burton Act." *Id.* § 4(g)(4).

17. At the Senate hearing on the Act, a County representative advocated for the Act, describing it as a "new and improved partnership agreement" with BLM, and claiming that the United States "will receive every dollar it would have made if the BLM were to have been able to dispose of the lands on its own."

**The United States' Transfer of Section 4(g) Land to the County**

18. In 1999, the United States, through BLM, conveyed various lands to the County in accordance with section 4(g) of the Act.

19. By a deed dated March 30, 1999, the United States conveyed land to the County that included 91 acres of the land that the County now leases to Nevada Links for the Bali Hai Golf Club (the "Deed").

20. A true and correct copy of the Deed is attached hereto as Exhibit 1.

21. Consistent with the Act, the Deed conveyed the land "[s]ubject to the condition[] that . . . (3) [a]ny sale, lease or other conveyance by Clark County shall be for fair market value and such proceeds shall be distributed in accordance with Section 4(g)(4) of the Act." Exhibit 1, at 1-2.

**The Memorandum of Agreement**

22. In October 2004, the County and BLM signed a Memorandum of Agreement (the "MOA") concerning the methods and procedures that the parties would use to account for

4

the County's transactions involving the sale, lease, or other conveyance of Section 4(g) Land.

23. A true and correct copy of the MOA is attached hereto as Exhibit 2.

24. Among other things, the MOA specifies that "[t]he term 'fair market value' as used in Section 4(g)(4) of [the Act] shall be based upon the highest and best use of the property, as determined by one or more disinterested, competent real estate appraisers, licensed by the State of Nevada, using widely accepted appraisal standards," and provides that, with exceptions not relevant here, "under no circumstance shall a sale, lease, or other conveyance for [Section 4(g) Land] be accepted by the County for less than the appraised fair market value." MOA § II.B.1, Exhibit 2, at 5.

**The Nevada Links Lease**

25. On July 20, 1999, the County entered into an agreement to lease approximately 154 acres of land to Nevada Links for the development and operation of a golf course and related facilities near the Airport (the "Lease"). The Lease includes approximately 91 acres of land that the United States had transferred under the Deed, in accordance with the Act.

26. The initial term of the Lease was 50 years from July 20, 1999. The Lease did not provide for fixed rent payments to the County. Instead, Nevada Links was to pay the County 40 percent of "net revenue," defined as total revenue minus deductions for approved budgeted expenses, capital improvement expenditures, a management fee, debt service, and a reserve for maintenance and operations.

27. The Lease has been amended four times.

28. On May 21, 2002, the County and Nevada Links agreed to a third amendment to the Lease, which provided Nevada Links with an option to renew the 50-year Lease at its expiration for an additional 49-year term, or through July 19, 2098.

29. On September 6, 2011, the County and Nevada Links executed a fourth amendment to the Lease (the "Fourth Amendment").

30. A true and correct copy of relevant excerpts of the Fourth Amendment is attached hereto as Exhibit 3.

31. The Fourth Amendment changes the rent to a fixed annual rent of $100,000, with

annual rent increases set at the lesser of two percent or the percentage increase in the consumer price index for the area. Fourth Amendment § 1.6.2.1, Exhibit 3, at 8-9.

32. Despite the fact that the Fourth Amendment alters the rent for the Lease, the County failed to obtain an appraisal to determine the fair market rent before agreeing to the amendment.

33. In addition to the new rent provision, the Fourth Amendment expanded Nevada Link's permissible use of the land beyond a golfing facility, allowing commercial uses such as offices, industrial facilities, warehousing, manufacturing, and wholesale and retail businesses. *Id.* § 1.1.7, Exhibit 3, at 2.

34. The Fourth Amendment expressly "recognizes that the Premises are within property subject to the provisions of the [Act] and that County is required by the [Act] to receive 'fair market value' for all leases." *Id.* § 1.6.8, Exhibit 3, at 10.

35. Further, it provides, "[s]hould any portion of this Fourth Amendment be determined by any court of competent jurisdiction to be in violation of the [Act], . . . it is expressly agreed that Company and County will negotiate in good faith to modify such terms or portions of this Fourth Amendment in order to comply with such Act." *Id*. § 4.6, Exhibit 3, at 12.

36. BLM's express written approval of the Fourth Amendment was a condition precedent to most of the Fourth Amendment's terms, including the new rent provision. *Id*. § 1.2.2, Exhibit 3, at 6.

37. In a letter to BLM, dated September 13, 2011, the Director of the County's Department of Aviation requested BLM's approval of the Fourth Amendment. The letter concedes that the Fourth Amendment is subject to the provisions of the Act and notes the MOA's requirement that the County not accept any lease for less than the appraised fair market value. The letter attached appraisals obtained by Nevada Links, but these appraisals offered no opinion on fair market rent.

38. By letter dated December 5, 2011, BLM responded that it would review whether the Fourth Amendment complied with the Act, but that BLM's review was not a form of

approval or disapproval of the Fourth Amendment. BLM explained that it was unable, without an appropriate appraisal, to determine whether the Fourth Amendment's rent amount represented fair market value.

39. The County agreed to cooperate with BLM to obtain an appraisal to determine the fair market value of the Lease. The resulting appraisal, dated January 22, 2013, determined that the fair market rent for the approximately 154 acres of land leased to Nevada Links was $3,800,000 million per year as of January 4, 2013, indicating that the fair market rent for the approximately 91 acres of section 4(g) land was at least $2,242,000 per year.

40. Based on this appraisal, BLM's State Director notified the Chair of the Clark County Commission, by letter dated September 13, 2013, that the Fourth Amendment's annual rent of $100,000 did not meet the Act's requirement of fair market value.

41. Despite the gross discrepancy between the Fourth Amendment's $100,000 rent and the appraised fair market rent for the leased land, the County acceded to the Fourth Amendment. In a May 24, 2016 letter, the County notified BLM that BLM's approval of the Fourth Amendment was not a condition precedent to implementation of the Fourth Amendment's rent provision, and that the County had been keeping funds received under the Fourth Amendment since September 2013. The County's letter enclosed a check payable to the Department of the Interior in the amount of $147,623.58, for rent proceeds collected from September 2013 through May 2016.

42. As of September 2011, when the County and Nevada Links executed the Fourth Amendment, the fair market rent for the 91 acres of Section 4(g) Land leased to Nevada Links was more than $2,000,000 per year. As of September 2013—the first month for which the County has paid the United States rent proceeds from the Fourth Amendment—the fair market rent for this land was more than $2,500,000 per year. Yet the County leased the entire 154 acres to Nevada Links for an annual rent of only $100,000, with maximum annual adjustments of 2 percent.

**COUNT ONE**
**(Breach of Deed Covenant)**
(County Defendant)

43. The United States incorporates by reference the allegations contained in

7

paragraphs 1 to 42 of this Complaint.

44. Approximately 91 acres of the land that the County leases to Nevada Links were conveyed to the County by the United States under section 4(g) of the Act.

45. Consistent with the Act, the Deed by which the United States conveyed this land to the County contains a covenant requiring the County to lease the land for fair market value and distribute 85 percent of the lease proceeds to the United States.

46. The County has breached this covenant by leasing the land to Nevada Links for an amount below fair market value, in this instance far below market value.

47. The County's breach of covenant has caused the United States to suffer tens of millions of dollars in damages. Even assuming that the effective date of the Fourth Amendment was September 2013, the County has already underpaid the United States millions of dollars of rent proceeds. Further, given that at least 32 years remain on the Lease, with an option for 49 more years, the County's failure to lease the land to Nevada Links at fair market value will deprive the United States of tens of millions of dollars in future lost rent proceeds, all to the detriment of the environmental and conservation projects in Nevada to which Congress directed those proceeds.

**COUNT TWO**
**(Breach of the MOA)**
(County Defendant)

48. The United States incorporates by reference the allegations contained in paragraphs 1 to 42 of this Complaint.

49. In the MOA, the County agreed, with exceptions not applicable here, that it would not sell, lease, or otherwise convey Section 4(g) Land for less than its appraised fair market value. The MOA constitutes a binding contract between the County and the United States.

50. The County breached the MOA by entering into the Fourth Amendment, which leases Section 4(g) Land to Nevada Links for a fraction of the land's fair market value.

51. Further, the County agreed to lease the land at the low rent without first obtaining an appraisal of fair market rent.

52. The County's breaches of the MOA caused the United States the same damages

alleged in paragraph 47 of this Complaint.

**COUNT THREE**
**(Breach of Fiduciary Duty)**
(County Defendant)

53. The United States incorporates by reference the allegations contained in paragraphs 1 to 42 of this Complaint.

54. The Act and the Deed manifest the United States' intent to create a trust under which the County had a duty, as trustee, to deal with Section 4(g) Land for the benefit of the United States.

55. Under the Act and the Deed, in the event the County sells, leases, or otherwise conveys land transferred to it from the United States, the County has a duty to charge fair market value, and distribute 85 percent of the proceeds to the United States for purposes designated in the Act.

56. The County breached its fiduciary duties to the United States by failing to determine the fair market value of the Lease before it entered into the Fourth Amendment, and by failing to lease Section 4(g) Land to Nevada Links at a fair market rent.

57. The County's breach of its fiduciary duties caused the United States the same damages alleged in paragraph 47 of this Complaint.

**COUNT FOUR**
**(Breach of Fiduciary Duty—Transferee and Participant)**
(Nevada Links Defendant)

58. The United States incorporates by reference the allegations contained in paragraphs 1 to 42, and 54 to 56 of this Complaint.

59. As set forth above, the County, as trustee, breached its fiduciary duties to the United States by failing to determine the fair market value of the Lease before it entered into the Fourth Amendment, and by failing to lease Section 4(g) Land to Nevada Links for fair market value.

60. As the lessee, Nevada Links is a transferee of property held in trust for the United States.

61. In addition, by agreeing to the Fourth Amendment, the County furthered, and

9

thereby participated in, the County's breach of its fiduciary duties as trustee.

62. Nevada Links should have known, and in fact knew, of the County's breach of its fiduciary duties as trustee. The Fourth Amendment expressly recognizes that the County is required to obtain fair market value for the Lease under the Act. Nevada Links knew that the rent provided in the Fourth Amendment was not supported by an appraisal of fair market rent. Further, Nevada Links knew or should have known that the rent provided in the Fourth Amendment was far below fair market value.

63. Accordingly, Nevada Links is liable to the United States for restitution and disgorgement of any profits it made or costs it avoided by entering the Fourth Amendment, and/or for all lost rent proceeds resulting from the Fourth Amendment.

**COUNT FIVE**
**(Declaratory Judgment)**
(All Defendants)

64. The United States incorporates by reference the allegations contained in paragraphs 1 to 42 of this Complaint.

65. The Fourth Amendment provides that "[s]hould any portion of this Fourth Amendment be determined by any court of competent jurisdiction to be in violation of the [Act], . . . it is expressly agreed that Company and County will negotiate in good faith to modify such terms or portions of this Fourth Amendment in order to comply with such Act." Fourth Amendment § 4.6.

66. The Fourth Amendment's rent provision violates the Act because it does not comply with the Act's requirement that the County lease Section 4(g) Land for fair market value.

67. Accordingly, the United States seeks a declaration that the Fourth Amendment's rent provision violates the Act, and that the County and Nevada Links are required to negotiate in good faith to modify the Fourth Amendment's rent provision so it will comply with the Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff United States of America demands judgment:

A. That the County is liable for damages to the United States resulting from the

County's breach of deed covenant, breach of contract, and/or breach of fiduciary duty;

B. That Nevada Links is liable for restitution and disgorgement of any profits it made or costs it avoided by entering the Fourth Amendment, and/or for all lost rent proceeds resulting from the Fourth Amendment;

C. That the Fourth Amendment's rent provision is declared to violate the Act, and that the County and Nevada Links are required to negotiate in good faith to modify the Fourth Amendment's rent provision to comply with the Act;

D. Providing such other and further relief to which the United States is entitled.

Respectfully submitted this first day of September 2017.

CHAD A. READLER
Acting Assistant Attorney General

STEVEN W. MYHRE
Acting United States Attorney

TROY K. FLAKE
Assistant United States Attorney

/s/ John R. Kresse
RUTH A. HARVEY
MICHAEL J. QUINN
JOHN R. KRESSE
DAVID H. DeCELLES

*Attorneys for the United States*