EXHIBIT 3 – Fourth Amendment

## FOURTH AMENDMENT TO GROUND LEASE AGREEMENT

THIS FOURTH AMENDMENT TO GROUND LEASE AGREEMENT (hereinafter referred to as the "Fourth Amendment") entered into as of the sixth day of September 2011, by and between the **COUNTY OF CLARK**, a political subdivision of the State of Nevada (hereinafter referred to as "County"), and **NEVADA LINKS, INC.**, a Nevada corporation authorized to do business in the State of Nevada (hereinafter referred to as "Company").

## W I T N E S S E T H :

WHEREAS, Company and County are parties to a certain Ground Lease Agreement, dated July 20, 1999 (the "Ground Lease"), as amended by that certain First Amendment to Ground Lease Agreement, dated August 16, 2000 (the "First Amendment"), that certain Second Amendment to Ground Lease Agreement, dated January 15, 2000 (the "Second Amendment"), and that certain Third Amendment to Ground Lease Agreement, dated and May 21, 2002 (the "Third Amendment") (collectively, the Ground Lease, the First Amendment, the Second Amendment and the Third Amendment are the "Lease"); and

WHEREAS, it is the intent of County and Company, by this Fourth Amendment, to amend and modify certain of the provisions and conditions of the Lease; and

WHEREAS, it is the intent of County and Company that except as expressly amended and modified by the provisions and conditions of this Fourth Amendment, the Lease shall and will remain in full force and effect.

NOW, THEREFORE, for and in consideration of the above recitals (which are incorporated into this Fourth Amendment by this reference), and the agreements, covenants and conditions herein, County and Company agree as follows:

## ARTICLE I

**1.1    DEFINITIONS**

Capitalized terms utilized herein shall have the same meanings otherwise ascribed thereto in the Lease, provided that the Lease is hereby modified to either, as applicable, add the following definitions or modify of the following terms which are otherwise defined therein; the following defined terms are in addition to other terms defined in the body of this Fourth Amendment.

1.1.1    The term "Airport," whenever used herein, means the McCarran International Airport located in Clark County, Nevada, and all property and improvements located within its general environs at the date of execution of this Fourth Amendment or at any future date during the term hereof.

1.1.2    The term "Airport Environs Map," whenever used herein, means the McCarran International Airport Environs Overlay District Map prepared by the Department

Page 1 of 55

Exhibit 3 -- Page 1 of 18

of Aviation and dated April 16, 2006, or any subsequent version of such Map as may be updated from time to time by the Department of Aviation.

1.1.3   The term "Approval Date," whenever used herein, means the date upon which this Fourth Amendment is approved by the Board of County Commissioners.

1.1.4   The term "Assignee," whenever used herein, means any individual or entity to whom the leasehold interest is assigned pursuant to Section 2.1.1, hereof, or an individual or entity, including Lender, who acquires the leasehold interest pursuant to Section 2.21.4.

1.1.5   The term "CC&Rs," whenever used herein, means the Covenants, Conditions, and Restrictions developed by the Company, approved by the CDR for Sublessees and Tenants and recorded with the official real estate records of Clark County, Nevada, which will include, but not be limited to, specific guidelines for uses of the Premises.

1.1.6   The term "Commence(s) Construction," whenever used herein, means commencing construction of the Commercial Facilities on the Premises by Company causing its construction contractor to obtain occupancy and control the area and to begin actual construction of the Commercial Facilities.

1.1.7   The term "Commercial Facilities," whenever used herein means Compatible Uses which shall conform with Section 1.5.2.1 hereof and may include, but are not limited to, commercial uses such as office, industrial facilities (including factory-offices, factory warehouses and industrial parks), warehousing, manufacturing, business, professional, and wholesale and retail (including restaurants, and businesses engaged in the sale of products or services for storage, use or consumption).

1.1.8   The term "Company," whenever used herein, means NEVADA LINKS, INC., a Nevada corporation.  The term "Company" shall also mean and include any Assignee of Company.

1.1.9   The term "County," whenever used herein, means Clark County, Nevada, as represented by the Clark County Board of Commissioners and where this Amendment speaks of "Approval by County," such approval means final action by the Clark County Board of Commissioners, with any and all applicable County protest and appeal periods having expired, or approval by the CDR where applicable.

1.1.10  The term "County's Designated Representative (hereinafter referred to as 'CDR')," whenever used herein, means the then-current Director (as hereinafter defined), or designee, acting on behalf of County.

Exhibit 3 -- Page 2 of 18

1.1.11 -The term "Department of Aviation (DOA)," whenever used herein, means the department of Clark County responsible for the management and oversight of County's Airport system.

1.1.12 The term "Director," whenever used herein, means the then-current Director of Aviation.  The Director may take such actions under the Lease, as amended hereby, as designated, empowered, or otherwise authorized by the Board of County Commissioners through Clark County Code, Title 20, as amended from time to time, or other lawful action designated as such by County and shall include such persons as may, from time to time, be authorized to act for the Director with respect to any or all matters pertaining to the Lease, as amended hereby.

1.1.13 The term "Effective Date," whenever used herein, means the date on which Company has fulfilled the Conditions Precedent, and on such date all applicable terms and conditions of this Fourth Amendment not previously operative pursuant to the terms of this Fourth Amendment will become operative and be in full force and effect.

1.1.14 The term "Environmental Laws," whenever used herein, means any one or all of the laws and/or regulations of the Environmental Protection Agency or any other federal, state or local agencies, including, but not limited to the following as the same are amended from time to time.  The term "Hazardous Material," whenever used herein, means the definitions of hazardous substance, hazardous materials, toxic substance, regulated substance or solid waste as defined in the applicable regulations, including, but not limited to, the regulations listed below, as may be amended time to time:

> COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT (42 U.S.C. Section 9601 et seq.)
>
> RESOURCE CONSERVATION AND RECOVERY ACT (42 U.S.C. Section 6941 et seq.)
>
> TOXIC SUBSTANCES CONTROL ACT (15 U.S.C. Section 2601 et seq.)
>
> SAFE DRINKING WATER ACT (42 U.S.C. Section 300h et seq.)
>
> CLEAN WATER ACT (33 U.S.C. Section 1251 et seq.)
>
> CLEAN AIR ACT (42 U.S.C. Section 7401 et seq.)
>
> NEVADA "Hazardous substance" definition (Nevada Revised Statutes ("NRS") Section 40.504 and all present or future regulations promulgated thereto.

Page 3 of 55

Exhibit 3 -- Page 3 of 18

NEVADA WATER POLLUTION CONTROL LAWS (NRS 445A.300 through 445A.730) and all present or future regulations promulgated thereto.

NEVADA AIR POLLUTION LAWS (NRS Chapter 445B) and all present or future regulations promulgated thereto.

NEVADA ENVIRONMENTAL LAWS (NRS Chapter 445C) and all present or future regulations promulgated thereto.

NEVADA ENVIRONMENTAL COVENANTS (Uniform Act) (NRS Chapter 445D) and all present or future regulations promulgated thereto.

HAZARDOUS MATERIALS, INCLUDING UNDERGROUND STORAGE TANK REGULATIONS (NRS Chapter 459 see Sections 459.700 through 459.780) and all present or future regulations promulgated thereto.

NEVADA FIRE MARSHAL ENVIRONMENTAL SECTIONS (NRS Sections 477.045 and .047) and all present or future regulations promulgated thereto.

HAZARDOUS MATERIALS TRANSPORTATION ACT (49 U.S.C. Section 5101 et seq.) and all present or future regulations promulgated thereto.

NEVADA OCCUPATIONAL SAFETY AND HEALTH ACT (NRS Chapter 618) and all present or future regulations promulgated thereto.

DEPARTMENT OF TRANSPORTATION TABLE (49 C.F.R. Section 172.101) and amendments thereto.

ENVIRONMENTAL PROTECTION AGENCY (40 C.F.R. PART 302) and amendments thereto.

The term "Hazardous Material" shall also mean and include any and all substances, materials, and wastes that are, or that become regulated under, or that are, or become classified as hazardous or toxic under any environmental law, whether such law is Federal, State or local, and the regulations promulgated thereunder and any other laws, regulations and ordinances (whether enacted by the Federal, State or local government) now in effect or hereinafter enacted that deal with the regulation or protection of the environment (including, but not limited to, the ambient air procedures and records detailing chlorofluorocarbons [CFC]), ambient air, ground water, surface water and land use, including sub-strata land.

Exhibit 3 -- Page 4 of 18

1.1.15 The term "Improvements," whenever used herein, means the construction and installation of all real property and personal property improvements commonly considered to be improvements, including, but not limited to, a building, grading, fencing, paving, lighting, roadways, parking lots, drainage, structures, and any similar development, enhancement or addition to property, including, but not limited to, those included within the term "Improvement" as defined in NRS 108.22128. Notwithstanding the assumption of any of these responsibilities by a Sublessee, Company shall remain primarily responsible to ensure all Improvements are completed in accordance with the Lease, as amended hereby.

1.1.16 The term "Lender," whenever used herein, shall mean the provider of (i) existing financing or (ii) future, construction or permanent financing (or any refinancing) to Company in connection with the current facilities on the Premises or construction of the Commercial Facilities and(/or) whose loan is secured by an interest in the Lease as hereby amended, which financing arrangements are to be approved by CDR to the extent required under Section 2.21 (entitled FINANCING) of the Lease , as hereby amended.

1.1.17 The term "Premises," whenever used herein, means that area set forth in the Lease as its legal description which is attached thereto and made a part hereof (the "existing legal description"). The existing legal description of the Premises will be attached to the Memorandum of Lease as described in Section 1.3 below and will be amended upon completion of the final legal description set forth in Section 1.4.6 hereof and will be appended to this Fourth Amendment as Exhibit "A" when completed.

1.1.18 The term "Release," whenever used herein means any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, disposing or dumping of any Hazardous Material which is or becomes a violation of Environmental Laws.

1.1.19 The term "Sublease," whenever used herein, means the documents signed by a Sublessee or Tenant for the leasing of space in the Commercial Facilities.

1.1.20 The term "Sublessee" or "Tenant," whenever used herein, means any entity or individual who leases office, retail, industrial or warehouse space for a valid, legal commercial activity in the Commercial Facilities. Consistent with the terms of Section 1.5 below, the CDR will retain the right to approve the uses of such Sublessee or Tenant. The terms Sublessee and Tenant may be used interchangeably.

## 1.2    CONDITIONS PRECEDENT

While the County and Company agree that this Fourth Amendment shall be deemed binding upon the parties after the date that both the County and Company have executed this Fourth Amendment and the Approval Date has occurred, it is agreed that except for the

Exhibit 3 -- Page 5 of 18

provisions and conditions of Sections 1.1, 1.4, 1.11,  1.15, 2.4, 2.5, 2.8, 2.17, 2.19, 3.15, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 4.11, 4.12 and 4.14 hereof, the remaining Sections of this Fourth Amendment shall not become operative unless and until the following conditions precedent are first satisfied (collectively, the "Conditions Precedent"):

1.2.1   Company must obtain express written approval of the terms and conditions of this Fourth Amendment from the current Lender. Both County and Company shall cooperate with Lender and reasonably consider and make those amendments and modifications to the Lease, as amended hereby, as Lender may reasonably require incident to its approval thereof, provided such amendments and modifications do not amend or modify the basic terms and protective provisions of the Lease, as amended hereby. County understands that such approval is beyond Company's control.

1.2.2   County must obtain express written approval of this Amendment from the US Bureau of Land Management ("BLM") and such approval must not be conditioned upon any changes to this Amendment.   County will seek BLM approval of this Amendment promptly following the Approval Date; however, Company understands and agrees that nothing herein obligates County to receive such approval. Company understands that such approval is beyond County's control.

1.2.3   Company must obtain a final non-conforming zone change, with all applicable County protest and appeal periods having expired, on the Premises that entitle Company to be able to develop the Commercial Facilities. Company understands and agrees that County is not obligated in any way to grant such zoning approval and that Company must comply with and follow all normal procedures that any other person or entity must follow in order to obtain such zoning approval under similar circumstances.  Further, it is understood and agreed that the approval of this Fourth Amendment in no way binds the County to grant such non-conforming zone change.

Company shall devote commercially reasonable efforts to achieve the satisfaction of the Conditions Precedent. If the Conditions Precedent are not satisfied by the date that is eighteen (18) months after the Approval Date, then either County or Company, upon thirty (30) days' advance written notice to the other, shall have the right to terminate this Fourth Amendment (but not the Lease). Notwithstanding the foregoing, if Company is devoting commercially reasonable efforts to achieve the satisfaction of the Conditions Precedent, as determined by the County, but, by no fault of Company, the Conditions Precedent have not been so satisfied by the end of said eighteen (18) month period, then said eighteen (18) month period shall be extended for such additional period of time as will allow Company to achieve the satisfaction of the Conditions Precedent and, in that case, the right of either party to send the foregoing notice of termination shall be suspended. In this regard, the parties acknowledge that Company's rights to terminate pursuant to Section 1.2.5 of the Lease have expired and are of no further force and effect. The date upon which the Conditions Precedent are deemed satisfied shall be referred to

Page 6 of 55

Exhibit 3 -- Page 6 of 18

or arising out of noise, vibrations, fumes, dust, fuel, particles and all other effects that may be caused or may have been caused by the operation of Aircraft landing at, taking off from, or operating at or on the Airports, or in or near the airspace above the Premises. Company, its successors, assigns, licensees, invitees, and tenants specifically waives any and all claims, including a claim that the easement is burdened by increases in noise, fumes, vibrations, dust, fuel, particles, or any other effects that may be caused by or result from the operation of Aircraft; changes in the type or frequency of Aircraft operations, the airport layout, or flight patterns; or increases in nighttime operations.

Further, Company, its successors, assigns, licensees, invitees, and tenants, hereby waive, remise, and release any right, claim, or cause of action as to use and/or regulation of all airspace more than thirty-five (35) feet above the finished grade of the Premises, except as may be granted by written approval from Airport and CDR.

The above grant of Avigation Easement and Waiver do not require the removal of an improvement or vegetation in the condition existing on the Premises as of the date of this Fourth Amendment.

Company expressly agrees for itself, its successors and assigns, to:

(a)  Submit to County plans showing exterior building finishes, including but not limited to glass surfaces and exterior lighting, which potentially may make it difficult for Aircraft pilots to distinguish between airport lights and other lights; produce glare or reflection which would impair Aircraft pilots landing or taking off at the Airport, impair visibility in the vicinity of the Airport, or otherwise endanger the landing, take off, or maneuvering of Aircraft; and shall not install the same without receiving a Director's Permit from the Department of Aviation or a variance from County's Airport Height Hazard Board of Adjustment. Company shall not use, permit, or suffer the use of the Premises in such manner as to create electrical interference with radio communication to or from any Aircraft or between any airport installation or navigational aid (NAVAID) and any Aircraft.

(b)  Not authorize the construction of any facility or improvement on the Premises, which attracts or results in the concentration of birds or other wildlife which would interfere with the safe operation of Aircraft in flight.

(c)  Use construction practices and materials to achieve an exterior to interior noise level reduction sufficient to achieve a maximum 40 decibel Day-Night Level (DNL 40 dB) interior noise level in any

Exhibit 3 -- Page 7 of 18

permanent structures, based on Aircraft noise contours shown on the McCarran International Airport Environs Overlay District Map, prepared by the Department of Aviation and dated April 16, 2006, or on a subsequent version of said map(s) as may be updated from time to time by the Department of Aviation (Airport Environs Map). Land, buildings, and structures shall be deemed to be impacted by the specific noise contours that cross them as shown on the Airport Environs Maps. Where a building is or would be impacted by one or more noise contours, the entire building shall be considered to be within the most restrictive noise contour.

1.5.3   Company shall obtain prior express written approval from the CDR to start up or otherwise provide any services which are not specifically included as Compatible Uses under this Section 1.5 of this Fourth Amendment; CDR's approval shall not be unreasonably withheld, provided such use or service is not an Incompatible Use and is consistent with the services specifically included as Compatible Uses under Section 1.5 of this Fourth Amendment.

1.5.4   Any violation of this Section 1.5 by Company shall be cause for County to declare Company in default under the Lease, as amended hereby.

1.5.5   This Section 1.5 replaces, as of the Effective Date, Sections 1.4 and 1.13 of the Lease.

1.5.6   To effectuate the waiver herein set forth, Company will cause its successors, assigns, and Subtenants to be bound to this waiver in writing (as to Subtenants within the applicable sublease) with the County as an intended third party beneficiary.

**1.6   RENTALS AND FEES**

1.6.1   Commencing on the Approval Date, and continuing throughout the term of this the Lease, as hereby amended, Company agrees to pay to County, on the first (1st) of each month, as rental for the Premises, the amount set forth in Section 1.6.2 below. Rent for any partial month during the term of the Lease, as amended hereby, shall be prorated:

1.6.2   **Land Rental Fees:**  Commencing on the Approval Date Company agrees to pay to County the following land rental fees:

1.6.2.1   Ground Rent:

One Hundred Thousand and 00/100 Dollars ($100,000.00 U.S.) per year, payable monthly in advance, and on or before the first (1st) of each month without invoice, in installments of Eight Thousand Three Hundred Thirty-Three and 33/100 Dollars ($8,333.33 U.S.) per month.

Exhibit 3 -- Page 8 of 18

Yearly thereafter, the annual rent payment shall be adjusted by the lesser of two percent (2%) or the percentage increase in the Consumer Price Index for the area. In no event shall the annual rent payment ever be less than the prior year's annual rent payment.

This rental shall begin on the Approval Date, with the first payment for the partial month of September, prorated as (# of days remaining in September)/30ths of a month and due no later than September 30, 2011. In the event that this Fourth Amendment shall terminate and be of no further force and effect on or before the Effective Date, the rent shall revert to the rent set forth in the Lease, with no credit or refund for the Ground Rent paid under this section 1.6.2.1 due Company.

1.6.3   Intentionally Deleted.

1.6.4   **Other Payments**:   Company agrees to pay County within fifteen (15) days of receipt of invoice for charges that become due to County under this Section, except for land rental fees charges, if any, under Section 1.6.2.1, or as provided elsewhere in the Lease, as amended hereby.

1.6.5   **Interest on Late Payments**:   In the event any required payment is not made by Company and remains unpaid (received by County) for a period of thirty (30) days or more, County will be entitled to, and Company will pay to County, interest at the rate of twelve percent (12%) per annum (the "Default Rate") on all amounts unpaid and which have remained unpaid thirty (30) days past the due date. However, County will not be prevented from declaring Company in default under the Lease, as amended hereby, for default of payments of rentals and fees or charges or from enforcing any other provisions contained herein or implied by law.

1.6.6   Fees and charges paid to County are not in place of or lessened by any taxes, fees or license charges that may be levied, assessed or charged by any governmental entity on Company, including, but not limited to, the County.

1.6.7   If Company, at any time within a three (3) year period after the Approval Date, assigns 100% of its rights under the Lease, as amended hereby, and the leasehold estate created hereunder, to any individual or entity that is not an "Affiliate" (as herein defined) of Company, excepting transfers of the Leasehold Interest to any Lender (including the current Lender) under a deed of trust, then Company shall pay to County, upon the closing of that assignment transaction, 50% of the "Net Consideration" (as herein defined). For purposes hereof, "Net Consideration" shall mean the purchase price paid to Company in consideration for the applicable assignment (including the net present value of any notes received as part of the purchase price), less the following:

1.6.7.1      Reasonable closing costs, including any brokerage fees;

Exhibit 3 -- Page 9 of 18

1.6.7.2    The repayment of all approved secured debt and unsecured debt relating to the Premises but only to the extent any such debt was approved by the County;

1.6.7.3    The payment of any remaining reasonable operating expenses for the Premises;

1.6.7.4    The repayment to Company and its Affiliates of all unpaid equity and debt (to the extent not paid above and including principal and interest as set forth in the Lease at Section 1.11 thereof) contributed to the Premises.

For purposes hereof, an "Affiliate" shall mean any entity under common ownership (regardless of the percentage of ownership interest) and/or management with Company or its principals.

1.6.8    Company recognizes that the Premises are within property subject to the provisions of the Southern Nevada Public Lands Management Act (SNPLMA), and that County is required by the SNPLMA to receive "fair market value" for all leases.   The Parties agree and acknowledge that they have negotiated this Amendment to be a fair market lease.   If it is determined by a court of competent jurisdiction that any of the terms and conditions of this Fourth Amendment violate the SNPLMA, then Company and the County agree to renegotiate in good faith the applicable terms of this Fourth Amendment with County, consistent with the provisions of Section 4.6 herein.   The provisions and conditions of this Section 1.6 replace, as of the Effective Date, the provisions and conditions of Sections 1.2.2, 1.6.1, 1.6.2, 1.7, 1.8 and 1.11 of the Lease.

## 1.7    UTILITIES

Company shall be responsible for and agrees to pay all recurring and nonrecurring costs for utilities (whether for installation, service, connections or maintenance thereof) used by Company at or upon the Premises with no responsibility or expense incurred by County.   Such payment, by Company, will be made directly to the utility supplier, except that if any such utilities should be supplied by County, then in this event, Company shall pay all such costs to County within fifteen (15) days of receipt of any invoice therefore. County agrees that any such costs invoiced to Company will be at the rates charged to County by the utility supplier.

## 1.8    METHOD OF PAYMENT AND REPORTS

1.8.1    Company reaffirms, as now set forth in Section 1.7.3 of the Lease, that it will make all payments by check made payable to the Clark County Department of Aviation and deliver or mail said payments to the Clark County Department of Aviation, Accounts Payable.  McCarran International Airport, P.O. Box 11005,

Exhibit 3 -- Page 10 of 18

that such failure is due to strikes, boycotts, labor disputes, embargoes, shortages of materials, acts of God, acts of the public enemy, acts of governmental authority, unusual weather conditions, floods, riots, rebellion or sabotage. However, the provisions of this Section will not apply to or excuse any failure by Company to pay rents, fees or any other money payments required under other provisions, covenants or agreements contained in this Fourth Amendment.

**4.2   QUIET ENJOYMENT**

County agrees that, upon payment of the rentals and fees and performance of the covenants, conditions and agreements on the part of Company to be performed hereunder, Company will have the right to peaceably occupy and enjoy the Premises.

**4.3   NONLIABILITY OF INDIVIDUALS**

Except in instances of fraud or material misrepresentations, no officer, agent or employee of either party to this Fourth Amendment will be charged personally or held contractually liable by or to the other party under any term or provision of this Fourth Amendment or because of any breach thereof, or because of its or their execution or attempted execution.

**4.4   NOTICES**

All notices or other communications required or permitted hereunder
Shall be in writing and shall be personally delivered or sent by registered or certified mail, return receipt requested, postage prepaid, telegraphed, delivered, sent by facsimile or a nationally recognized commercial courier service including, but not limited to UPS,  Federal Express and DHL, and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, four (4) business days after the date of posting by the United States Post Office, (iii) if given by facsimile, when sent (as confirmed by a facsimile confirmation receipt) or (iv) by commercial courier based on commercial courier's receipt of delivery. Any notice, request, demand, direction or other communication sent by facsimile must be confirmed within forty-eight (48) hours.

Notices shall be addressed as follows:

If to County:            Clark County, Nevada
                         Director of Aviation
                         P. O. Box 11005, Airport Station
                         Las Vegas, Nevada 89111-1005
                         Email:  Business@mccarran.com
                         FAX:  (702) 261-5050

With copies to:

Page 48 of 55

Exhibit 3 -- Page 11 of 18

Kolesar & Leatham
Attn: Alan J. Lefebvre, Esq.
400 S. Rampart, Ste. 400
Las Vegas, NV 89145
Email: alefebvre@klnevada.com
PHONE: (702) 362-7800
FAX: (702) 362-9472

If to Company:          Nevada Links, Inc.
Attn: Mr. Michael Luce, Secretary
2030 E. Flamingo Boulevard, Suite 390
Las Vegas, NV 89119
Email: mluce@waltersgolf.com
PHONE: (702) 450-8088
FAX:  (702) 450-8055

or such other address as a party may from time to time designate by providing Notice hereunder.

**4.5    HEADINGS, TITLES OR CAPTIONS**

Article, section or paragraph headings, titles or captions are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or extent of any provision of this Fourth Amendment.

**4.6    INVALID PROVISIONS**

It is expressly understood and agreed by and between the parties hereto that in the event any covenant, condition or provision herein contained is held to be invalid by any court of competent jurisdiction, the invalidity of such covenant, condition or provision will in no way affect any other covenant, condition or provision herein contained; provided, however, that the invalidity of any such covenant, condition or provision does not materially prejudice either County or Company in their respective rights and obligations contained in the valid covenants, conditions or provisions of this Fourth Amendment.

Should any portion of this Fourth Amendment be determined by any court of competent jurisdiction to be in violation of the Southern Nevada Public Lands Management Act of 1998, as amended from time to time, it is expressly agreed that Company and County will negotiate in good faith to modify such terms or portions of this Fourth Amendment in order to comply with such Act.

**4.7    NON-DISCRIMINATION**

Company agrees to comply with all federal, state and local laws regarding non-discrimination.

Exhibit 3 -- Page 12 of 18

The County is committed to promoting full and equal protection and opportunity for all persons doing business with Clark County. Company, acknowledges that County has an obligation to ensure Company, its officers, agents, representatives, contractors, subcontractors or subtenants, do not engage in any discriminatory practices at any time during the term of this Fourth Amendment. Company further acknowledges that if Company, its officers, agents, representatives, contractors, subcontractors or subtenants, are found guilty by an appropriate authority for refusing to grant services in places of public accommodations or to do business with an individual or company due to reasons of race, color, religion, sex, sexual orientation, gender identity or gender expression, age, disability, national origin, ancestry, or any other protected status, as provided by law, County may elect to terminate this Fourth Amendment.

In connection with the performance of work under the Lease, as amended hereby, the Company, its officers, agents, representatives, contractors, subcontractors or subtenants, agree not to discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, gender identity or gender expression, age, disability, national origin, ancestry, or any other protected status, as provided by law, including, without limitation, with regard to employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including, without limitation, apprenticeship.

The Company further agrees to insert the provisions of this Section 4.7 in all subcontracts hereunder, including, but not limited to, contracts for Improvements, Subleases, etc., except subcontracts for standard commercial supplies or raw materials.

## 4.8   INDEPENDENT CONTRACT

Company is deemed to be an independent contractor for all purposes regarding its operations and no agency, expressed or implied, exists.

## 4.9   FULL AUTHORITY

In the event that the Federal Aviation Administration or its successors requires modifications or changes in this Fourth Amendment as a condition precedent to the granting of funds for the improvement of the Airport, or otherwise, Company agrees to consent to such amendments, modifications, revisions, supplements, or deletions of any of the terms, conditions, or requirements of this Fourth Amendment as may be required. Any expenses resulting from such amendments, modifications, revisions, supplements or deletions, shall be born solely by Company.

## 4.10   ADVERSE TENANCY

As of the Effective Date, any unauthorized holding over by Company after the termination of the Lease, as amended hereby, or the expiration of its terms without the written consent of County, except for the period authorized for removal of Company's

property upon the expiration or termination hereof, shall entitle County to collect from Company as liquidated damages for such holding over, double the total of all rents in effect immediately prior to the commencing of such holding over. The DOA may perfect a lien on the property of Company as security for the payment of any damages or unpaid commissions and shall be entitled to collect the same by foreclosure of such lien and sale of such property.

**4.11    DISPUTES**

Any and all disputes arising under the Lease, as amended hereby, which cannot be administratively resolved, shall be determined according to the laws of the State of Nevada, and Company agrees that the venue of any such dispute, either administratively or judicial, shall be in Clark County, Nevada. Company agrees as a condition of the Lease, as amended hereby, that notwithstanding the existence of any dispute between the parties, insofar as is possible under the terms of this Fourth Amendment, each party shall continue to perform the obligations required of it during the continuation of any such dispute, unless enjoined or prohibited by a court of competent jurisdiction.

**4.12    AGENT FOR SERVICE OF PROCESS**

The parties hereto expressly understand and agree that if Company is not a resident of the State of Nevada, or is an association or partnership without a member or partner resident of said State, or is a foreign corporation, and then in any such event Company does designate its State of Nevada registered agent as its agent for the purpose of service of process in any court action between it and County arising out of or based upon this Fourth Amendment, and the service shall be made as provided by the laws of the State of Nevada by serving also Company's registered agent. The parties hereto expressly agree, covenant, and stipulate that Company shall also personally be served with such process out of this State by the registered mailing of such complaint and process to Company at the address set forth herein. Any such service out of this State shall constitute valid service upon Company as of the date of receipt thereof. The parties hereto further expressly agree that Company is amenable to and hereby agrees to the process so served, submits to the jurisdiction, waives any and all obligations and protests thereto, any laws to the contrary notwithstanding.

**4.13    GENDER**

Words of any gender used in this Fourth Amendment shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.

**4.14    ENTIRE AGREEMENT**

4.14.1 The Lease, as amended hereby, represents the entire agreement between the parties hereto with respect to the subject matter hereof and will not be modified or canceled by mutual agreement or in any manner except by instrument in writing,

Exhibit 3 -- Page 14 of 18

executed by the parties or their respective successors in interest. The parties further understand and agree that the other party and its agents have made no representations or promises with respect to the Lease, as amended hereby, or the making or entry into this Fourth Amendment, except as in the Lease, as amended hereby, expressly set forth, and that no claim or liability for cause for termination shall be asserted by either party against the other, and such party shall not be liable by reason of, the making of any representations or promises not expressly stated in the Lease, as amended hereby, including, but not limited to, any representations or promises made before or to the Clark County Board of Commissioners, any other written or oral agreement with the other party being expressly waived.

4.14.2 The individuals executing this Fourth Amendment personally warrant that they have full authority to execute this Fourth Amendment on behalf of the entity for whom they are acting herein.

4.14.3 The parties hereto acknowledge that they have read this Fourth Amendment thoroughly, including any exhibits or attachments hereto, and have sought and received whatever competent advice and counsel was necessary for them to form a full and complete understanding of all rights and obligations herein.

## 4.15   SUCCESSORS AND ASSIGNS

This Fourth Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors, or assigns, as the case may be.

## 4.16   SURVIVABILITY

The terms and conditions of the Fourth Amendment regarding confidentiality, indemnification, warranties, payments, dispute resolutions and other that by their sense and context are intended to survive the expiration of the Fourth Amendment will survive.

## 4.17   AMENDMENT

County and Company acknowledge and agree that except as expressly amended or modified by this Fourth Amendment, the Lease shall and will remain in full force and effect.

IN WITNESS WHEREOF, County and Company have executed these presents the day and year first above written.

**Signatures on following page.**

Page 52 of 55

Exhibit 3 -- Page 15 of 18

**CLARK COUNTY, NEVADA**

BY: _____
Name: _____
Its: _____

**COMPANY**

NEVADA LINKS, INC.,
a Nevada corporation

By: _____
Name: _____ Michael E. Luce _____
Its: _____ Secretary. _____

**Exhibit A**
**to**
**Fourth Amendment**


**DESCRIPTION OF PREMISES**

(The legal description of the Premises shall be as currently set forth in the Lease shall be in effect until the final legal description of the Premises, as required under Section  1.4.6  of this Fourth Amendment, is complete and then the final legal description of the Premises shall be attached hereto and shall replace the aforementioned legal description in the Lease.)

**Exhibit B**
**to**
**Fourth Amendment**

**FORM OF SUBLEASE**

(The form of sublease as required under Section 1.9.2
will be attached hereto on or before the Effective Date.)

Page 55 of 55

Exhibit 3 -- Page 18 of 18