Anthony Schoenberg (*pro hac vice*)
California Bar No. 203714
aschoenberg@fbm.com
David J. Lazerwitz (*pro hac vice*)
California Bar No. 221349
dlazerwitz@fbm.com
Emily M. Lieban (*pro hac vice*)
California Bar No. 303079
elieban@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Todd L. Bice
Nevada Bar No. 4534
tlb@pisanellibice.com
Robert A. Ryan
Nevada Bar No. 12084
rr@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101

Attorneys for Nevada Links, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>COUNTY OF CLARK and NEVADA LINKS, INC.,<br><br>　　　　　Defendant. | Case No. 2:17-cv-02303-MMD-PAL<br><br>**DEFENDANT NEVADA LINKS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br>(Hearing Requested)<br><br><br>The Hon. Miranda M. Du |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS -
Case No. 2:17-cv-02303-MMD-PAL

34938\6359574.4

## I. INTRODUCTION

Plaintiff United States of America ("Plaintiff" or the "United States") has failed to allege sufficient facts to support its convoluted claim for breach of fiduciary duty against Nevada Links, a private corporation with no legal relationship to the Plaintiff. In its Opposition (ECF 25), Plaintiff engages in a tortured reading of the relevant cases to try to create trust duties where none exist, and in the process seeks to create an entirely new common law theory of transferee liability out of whole cloth, unsupported by relevant legal authority. In fact, in the one case with analogous facts, *Begay*, the court granted a motion to dismiss where the defendant—like Nevada Links—was a business that had done nothing more than enter into an agreement for certain land rights that the plaintiffs claimed, after the fact, were known to the defendants to be priced below "fair market value." This dispositive case alone warrants the granting of this motion.

Plaintiff also improperly proffers videotaped testimony from 2011, out of which Plaintiff cherry-picks selected phrases in an attempt to paint a misleading picture that Nevada Links allegedly had knowledge of the County's purported breach of trust. Even assuming that the Court considers this improper extrinsic evidence, a review of the entire video demonstrates that Nevada Links did not have actual or constructive knowledge of the alleged breach of trust by the County at the relevant time.

Accordingly, Nevada Links' motion to dismiss should be granted.

## II. ARGUMENT.

### A. Plaintiff's Tortured Reading Of The Relevant Case Law Cannot Save Its Claims Against Nevada Links Because Those Cases Confirm That Congress Did Not Intend to Create A Trust under SNPLMA.

No party disputes that a trust may only exist where Congress, in enacting law, "manifest[ed] . . . an intent to create a fiduciary relationship." *District 22 United Mine Workers of Am. v. Utah*, 229 F.3d 982, 989 (10th Cir. 2000) ("*District 22*") (citation omitted). However, absent an express declaration of trust, whether Congress has manifested that intent depends on whether "the relevant statutory provision contains 'an enumeration of duties' which would justify a conclusion that Congress has intended to create a trust relationship." *Id.*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS -   1
Case No. 2:17-cv-02303-MMD-PAL

34938\6359574.4

SNPLMA lacks any express language to indicate that the transferred lands would be held in trust. Moreover, it does not contain an enumeration of duties to support the conclusion that Congress intended to create a trust relationship. Like the enabling act at issue in *District 22*, SNPLMA establishes an honorary purpose—the "orderly disposal of certain Federal Lands in Clark County, Nevada" and "the acquisition of environmentally sensitive lands" within the State. *Id.* at 989; SNPLMA § 2(b). The first part of this purpose—and much of the SNPLMA—does not govern the actions of the County at all and, instead, governs the actions of the United States' Secretary of the Interior's disposal of federal lands located within the County. *See* SNPLMA at §§4(a)-(f). Only subsection 4(g) concerns activity by the County, and it provides the County, as transferee, with broad discretion in the disposal of public lands. SNPLMA at § 4(g). Section 4(g) does not create any obligation on the part of the County to act once it accepts the transfer of land; the County was under no obligation to sell or lease the land and could instead hold the land unused in perpetuity with no monies received by the County and, thus, nothing transferred to the United States. This broad discretion prefaced only by the precatory language of the statute cannot be said to manifest an intent to create a trust. Accordingly, Plaintiff cannot state a claim based on the alleged creation of a trust. *See District 22*, 229 F.3d at 990 (no trust created by Utah Enabling Act because it did not "direct and restrict the legislature as to the manner in which it may dispose of the Lands and proceeds therefrom").

Plaintiff strains to analogize Section 4(g) of the SNPLMA to the Colorado Enabling Act that was at issue in *Branson School District RE-82 v. Romer*, 161 F.3d 619 (10th Cir. 1998) ("*Branson*"). However, unlike the SNPLMA, the enabling act at issue in *Branson* not only transferred lands for the particular benefit of the public schools, it also prescribed the manner of disposal ("public sale"), a minimum per acre price ($2.50), the manner in which funds were to be held (segregated permanent school fund), and the use of the interest from those funds. *Id.* at 634. Moreover, the relevant enabling act provision in *Branson* provided that the state "shall" dispose of the lands at issue, thereby removing all discretion from the state. *Id.* By contrast, Section 4(g) does not establish the manner of sale, a specific minimum price beyond that which the market will support, the manner in which the various recipients of the proceeds are required to hold the funds,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

2

34938\6359574.4

or the use of interest on those funds.  In fact, the only requirements of Section 4(g) on the alleged trustee are to remit the funds from sale or lease, if any, of the lands to the various recipients and—should the County decide to dispose of the land—seek fair market value.  SNPLMA at § 4(g)(4).  These rote statutory duties are insufficient to support the establishment of a trust in lieu of ordinary statutory responsibilities.  Other than *Branson* and its consideration of the readily distinguishable Colorado Enabling Act, Plaintiff has not cited to a single case in which the United States has been found to have conveyed land in trust to a state.

For these reasons, the court should reject Plaintiff's attempt to extend narrowly crafted precedent governing the establishment of a trust and thereby transform what is otherwise a statutory responsibility into one governed by trust and fiduciary duty principles.

### B. Nevada Links Is Not Liable For The Actions Of The County.

Even assuming that the Act created a trust obligation, Plaintiff has failed to plead sufficient facts to establish that the County breached the alleged trust.  The County leased the property following a competitive bidding process in 1999.  *See* Complaint (ECF 1) ("Compl.") at ¶ 25.  The Fourth Amendment was not written upon a blank slate but against the backdrop of established obligations under the 1999 Lease and subsequent amendments.  Against that backdrop, Plaintiff has not pled—and cannot plead—any facts demonstrating that Nevada Links had actual or constructive knowledge of the County's alleged breach.

#### 1. Plaintiff's Mandatory Appraisal Theory Is Contrary To Law.

Plaintiff asserts that the County was required to seek an appraisal in order to fulfill its alleged obligations as a trustee, and Plaintiff further asserts that Nevada Links knew of the existence of such a duty and of the County's alleged breach of that duty.  Plaintiff's Opposition to Motion to Dismiss by Defendant Nevada Links, Inc. (ECF 25) ("Opp.") at 12.  This far-fetched theory is based on a fundamental misstatement of law.  "A trustee's duty of loyalty and of reasonable care dictates that it must seek to obtain the best price obtainable for trust property which it is selling."  *Murphy v. Central Bank & Tr. Co.*, 699 P.2d 13, 14 (1985).  To that end, the trustee "should secure competitive bidding and surround the sale with such other factors as will tend to cause the property to sell to the greatest advantage."  *Id.*  In arguing that the County has

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

3

34938\6359574.4

failed in this duty, Plaintiff cites to cases where the trustee made no effort to ensure it received the highest price the market would support. In *National Parks and Conservation Association v. Board of State Lands*, 869 P.2d 909, 922 (Utah 1993), the trustee relied on an appraisal submitted by the buyer without fostering any competition or making an effort to independently determine the fair market value of the trust corpus. Similarly, in *Belcher v. Benjamin*, 348 F. Supp. 61, 156-58 (N.D. Ala. 1968), there was no advertisement of the public sale of the shares at issue and the trustee relied on an appraisal made 30 years prior to establish the reserve price. In both cases, the courts found that the trustees had breached their duty to seek the best price. *Nat'l Parks & Conserv. Ass'n*, 869 P.2d at 922; *Belcher*, 348 F Supp. at 158.

In contrast, here the County published a request for proposal and solicited bids from the public at large. RJN at Ex. 1. The bid made by Nevada Links was accepted by the County following that competitive bidding process. *Id.* Accordingly, even assuming a trust exists, the County fully complied with its obligations to secure competitive bidding consistent with the cases cited in Plaintiff's brief.

Moreover, Plaintiff states that a "trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property." Opp. at 11, citing Restatement (Second) of Trusts § 174. The County has done exactly that here. The Lease conveyed a total of 154 acres of land to Nevada Links, 63 acres of which belonged to the County independent of the land conveyed by Plaintiff under the SNPLMA. *See* Compl. at ¶ 25. They County has treated identically all 154 acres—including the 91 acres of former federal property and the remaining 63 acres contributed by the County—by initiating a competitive bidding process in 1999 and leasing all of it to Nevada Links, the winning bidder. *See* Compl. at ¶ 25; RJN at Ex. 1. This refutes Plaintiff's theory that there was a breach of trust (assuming a trust existed in the first place), much less that Nevada Links had knowledge of it.

### 2. Plaintiff Has Not Pled Facts Sufficient To Demonstrate That Nevada Links Had Actual Or Constructive Knowledge Of The County's Alleged Breach.

Plaintiff contends that as a participant in the County's alleged breach, Nevada Links is jointly and severally liable with the County. In the first instance, Plaintiff misstates the law

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

4

34938\6359574.4

regarding transferee liability.  In the second, Plaintiff has failed to allege in its complaint any facts supporting its conclusory and threadbare allegation that Nevada Links had either actual or constructive knowledge of the County's alleged breach.  Plaintiff's claim against Nevada Links should therefore be dismissed.  *See Fowler*, 578 F.3d at 210–11.

### a. Plaintiff Misstates And Attempts To Improperly Expand The Legal Standard For Transferee Liability.

Plaintiff claims that there are two distinct bases for holding Nevada Links liable for the alleged breach of the County—as a transferee of the property and as a "knowing participant" in the alleged breach of trust.  These theories, however, are one in the same.

In order to hold the transferee of a trust asset liable for a breach committed by a fiduciary, the beneficiary must demonstrate that the transferee "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Tr. and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).  Plaintiff attempts to create a separate basis for liability under *Donovan v. Schmoutey*, 592 F. Supp. 1361, 1396 (D. Nev. 1984), arguing that Nevada Links was a "knowing participant" in the County's alleged breach of trust.  But in fact, *Donovan* relies on the same standard as *Harris*, that the transferee had "actual or constructive knowledge at the time that the transaction amounted to a breach or the legal equivalent of such knowledge." *Id.*  Plaintiff's two theories—liability as transferee or as participant—create a distinction without difference.  In either case, Plaintiff must demonstrate that Nevada Links had actual or constructive knowledge of the alleged breach. *Harris*, 530 U.S. at 251.  Even when considered in the light most favorable to Plaintiff, the allegations fall far short of satisfying the standard applied under these cases.

### b. Plaintiff Has Not Established Through Its Pleading Or Its Improper Extrinsic Evidence That Nevada Links Had Actual Or Constructive Knowledge Of The County's Alleged Breach Of Fiduciary Duty.

As Nevada Links previously explained, Plaintiff must surmount a high bar to plead a claim against Nevada Links as a transferee.  Courts have not hesitated to dismiss claims at the pleading stage where "the most that can be said from the allegations is that the Corporate Defendants knew

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

5

34938\6359574.4

that they got a good deal on [property] when doing business with the [fiduciaries]." *Begay v. Public Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1209 (D.N.M. 2010).  To successfully hold a transferee liable for the breach of the fiduciary, courts have required the plaintiff to demonstrate that the transferee acted with egregious disregard for the trust.  *See Seminole Nation v. U.S.,* 316 U.S. 286, 295-96 (1942) (third-party participant knew or should have known of a breach when the participant had reports that "show[ed] conclusively that the [fiduciaries] were notoriously and incurably corrupt, that every branch of the service was infested with favoritism, graft and crookedness, and that by such methods the [fiduciaries] acquired large fortunes" at the expense of the beneficiaries); *Donovan v. Schmoutey*, 592 F. Supp. 1361, 1398-99 (D. Nev. 1984) (borrowers liable as knowing participants when the borrowers knew, among other things, that (1) they were financially unstable, (2) they had applied prior loans for purposes unrelated to their businesses, (3) the securing collateral was insufficient to complete repayment, (4) they had provided material misrepresentations to the trustees, and (5) the assumptions on which the loan relied were materially incorrect).  Plaintiff has not alleged that Nevada Links has committed any acts remotely analogous to the acts of the defendants in *Seminole Nation* or *Schmoutey*.

Instead, Plaintiff appears to argue that because Nevada Links knew that the County had not conducted an appraisal in the advance of the Fourth Amendment, Nevada Links must have been aware of a breach of fiduciary duty.  Opp. at 12; Compl. at ¶ 62.  As explained above, the County was under no obligation to conduct an appraisal.  *See Murphy v. Central Bank & Tr. Co.*, 699 P.2d 13, 14 (1985).  The County's only duty—assuming a trust was created—was to "exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property." *Harris Tr. and Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 251 (2000).  The County did so and further conducted a public bidding process to obtain the best value the market would support.  RJN, Ex. 1.  The mere absence of an appraisal does not prima facie establish that the County breached its alleged duty or that Nevada Links had knowledge of the breach, and none of the relevant cases support Plaintiff's position.

Plaintiff next argues that the differential between the 2013 appraisal and the Fourth Amendment's monthly rent compels the inference that Nevada Links knew it was renting the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

6

34938\6359574.4

1  property for less than fair market value.  Opp. at 12.  In an effort to support this bald allegation,
2  Plaintiff once again relies on an appraisal conducted in 2013, two years <u>after</u> Nevada Links and
3  the County executed the Fourth Amendment in 2011.  Opp. at 12; Compl. at ¶ 39.  Again, Plaintiff
4  does not and cannot allege that Nevada Links had knowledge of this appraisal at the time it
5  entered into the Fourth Amendment because it occurred two years after the Fourth Amendment
6  was negotiated and executed.  *Id.*

7  In a last ditch effort to try to salvage its claim against Nevada Links, Plaintiff seeks judicial
8  notice of video footage of the Clark County Board of Commissioners hearing from 2011 regarding
9  approval of the Fourth Amendment, cherry picking statements made at the hearing to argue that
10 Nevada Links knew that the Fourth Amendment would breach the County's alleged duties to
11 Plaintiff.  *See* Plaintiff's Request for Judicial Notice (ECF 26) ("RJN").  Plaintiff's argument fails
12 on multiple grounds.  First, while it is correct that the Court may take judicial notice of matters of
13 "public record"—which may include the <u>fact</u> that the hearing took place in 2011—it "may not take
14 judicial notice of a fact that is 'subject to reasonable dispute.'"  *Lee v. City of Los Angeles*, 250
15 F.3d 668, 689 (2001).  Here, Plaintiff asks the Court to conclude, based on the proffered video
16 footage, that "Nevada Links possessed actual knowledge of the County's legal obligations to the
17 United States and that the Fourth Amendment, if carried out, would violate those obligations."
18 Opposition at 13:1-4.  In doing so, Plaintiff effectively seeks judicial notice of disputed facts,
19 which is improper.  *See Lee*, 250 F.3d at 689-690 (finding that district court improperly took
20 judicial notice that a party waived extradition in a public document).  Nevada Links <u>disputes</u> that it
21 had knowledge (actual or constructive) that by entering into the Fourth Amendment the County
22 breached any obligation to the United States.  In fact, whether there even was such a breach is a
23 fundamental disputed issue in this case.  Thus, this is an improper request for judicial notice, and
24 the Court should not consider the extrinsic evidence, other than to demonstrate the <u>fact</u> that the
25 hearing took place in 2011.  *See* Nevada Links' Opposition To Request For Judicial Notice, filed
26 herewith.

27 Even if the Court decides to consider the video testimony, however, a review of that
28 testimony in its entirety (rather than just the cherry-picked excerpts discussed in Plaintiff's papers)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS   7   34938\6359574.4
Case No. 2:17-cv-02303-MMD-PAL

undermines the County's position, as it does nothing to establish that Nevada Links had knowledge of the County's alleged breach of trust. As an initial matter, the testimony does not—contrary to Plaintiff's claims—contain an admission that the fair market rent under the Lease was "over $2 million per year." Instead, the testimony reveals that while an appraisal in 2010 valued the land at $27 million, Nevada Links had to incur $50 million in debt to develop the golf course on the land.[1] In addition, because the original Lease was a "profit participation" lease under which Nevada Links agreed to pay 40 percent of the net revenue to the County as rent, an economic analysis concluded that <u>no rent was due</u> to the County under that framework because there was no profit given the significant debt service that Nevada Links was required to pay on the property.[2] As a result, the County <u>demanded</u> that the rent be changed to a fixed, annual payment of $100,000 per year in lieu of the profit participation framework that had governed the lease since 1999, and the County further mandated that Nevada Links continue to be responsible for the entirety of the outstanding debt service on the property.[3]

All Plaintiff has demonstrated by way of the video is that the property subject to the Lease was so underwater that no rent could be collected under the original Lease terms. Against this contractual backdrop, the County and Nevada Links negotiated—based on a demand by the

---

[1] Plaintiff's Request for Judicial Notice, Ex. B at 52:00-52:03 ("[Nevada Links] had been there twelve years. We were $50,000,000 in debt.") and 53:57-55:47 ("The other thing that we did is to determine the value of the fair market value of the real estate is we went and we hired again CB Richard Ellis to appraise the property for us. . . . This was the first appraisal that CB Richard Ellis did on the property and this was in September 1, 2010. The appraisal came in at $27,600,000 at its highest value. We have $50,000,000 in obligations there. ).

[2] Plaintiff's Request for Judicial Notice, Ex. B at 53:57-55:47 ("At the same time, we went and hired Restrepo Consulting who specializes in financial analysis. We asked them to take a look at the lease, to take a look at the facts and advise is on what the fair market rent was for the property. . . . Restrepo's conclusion was real simple. If the property appraised for $27,600,000 and 10% is $2,760,000 a year that would be the rent at 10%. Fifty million dollars worth of debt at 10% interest is $5,000,000 a year. So the debt exceeded the rent payments substantially so their analysis was clearly there was no rent due."). *See also* RJN at Ex. 1; Complaint ¶ 26.

[3] Plaintiff's Request for Judicial Notice, Ex. B at 52:26-53:03 ("We had a discussion with Commissioner Sisolak who has initial responsibility for the area we are in and he said clearly – he can only speak for himself he could not speak for other commissioners, but his position was real simple – there would be some rent paid regardless of the appraisal and he insisted on a minimum of $100,000 a year and also insisted that we take responsibility for 100% of the existing debt.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

8

34938\6359574.4

1  County—for a fixed rental value to provide income to the Plaintiff, the State of Nevada, and the
2  County.  Plaintiff has not demonstrated that Nevada Links had any reason to believe that the
3  County had breached its duty under the Act.  To the contrary, the testimony demonstrates that the
4  County was zealously advocating to obtain larger rent payments from Nevada Links.
5  Like the corporate defendants in *Begay*, Nevada Links is "nothing more than a mere
6  contracting party."  710 F. Supp. 2d at 1210.  This is not a case where the transferee willfully
7  participated in the activities of a "notoriously and incurably corrupt" fiduciary, *Seminole Nation*,
8  316 U.S. at 295- 96, or where the participant purposefully misrepresented their own finances and
9  assumptions.  *Donovan*, 592 F. Supp. at 1398-99.  This case instead concerns a "mere contracting
10 party" seeking "the best deal [it] legally can."  *Begay*, 710 F. Supp. 2d at 1210.  In the absence of
11 allegations establishing Nevada Links knew of a breach on the part of the County, Plaintiff's
12 claims must fail.

13  **C.      Plaintiff's Claim For Declaratory Relief Must Be Dismissed Because There Is
14           No Actual Controversy.**

15  Because Plaintiff's claim for breach of fiduciary duty fails against Nevada Links,
16 Plaintiff's claim for declaratory judgment as to Nevada Links also fails.  *Harris County Texas v.*
17 *MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015); *Earnest v. Lowentritt*, 690 F.2d 1198, 1203
18 (5th Cir. 1982).

19 **III.   CONCLUSION**
20  Plaintiff fails to plead facts sufficient to support the finding of a fiduciary duty between it
21 and the County.  Moreover, Plaintiff has not pled facts sufficient to support a theory that Nevada
22 Links knew or should have known of an alleged breach of trust.  Plaintiff's Opposition does
23 nothing to remedy these defects, and the 2011 public hearing testimony on which Plaintiff relies is
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS           9                    34938\6359574.4
Case No. 2:17-cv-02303-MMD-PAL

1  not only an improper subject for judicial notice, it actually confirms that this motion should be
2  granted.  For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice
3  as to Nevada Links.

4  Dated:  December 18, 2017         FARELLA BRAUN + MARTEL LLP

6              By:    /s/ Anthony P. Schoenberg
                      Anthony P. Schoenberg
7              Attorneys for Nevada Links, Inc.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:17-cv-02303-MMD-PAL

10

34938\6359574.4