UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF CLARK and NEVADA LINKS, INC.,<br><br>Defendants. | Case No. 2:17-cv-02303-MMD-PAL<br><br>ORDER |

**I.    SUMMARY**

This case involves a dispute over land that Plaintiff United States granted to Defendant County of Clark ("Clark County"), and which Clark County leased to Defendant Nevada Links, Inc. ("Nevada Links"). Before the Court is Nevada Links' ("Nevada Links") motion to dismiss ("Motion") (ECF No. 15). The Court has reviewed the United States' response (ECF No. 25) and Nevada Links' reply (ECF No. 31), as well as a brief submitted by Clark County (ECF No. 47).[1] For the following reasons, the Court denies Nevada Links' Motion.

///

///

///

---

[1] The United States' claims against Nevada Links are predicated on the existence of a trust relationship between the United States and Clark County. Accordingly, the Court permitted Clark County an opportunity to address the issue of whether such a trust relationship exists given its significance to the United States' claims against Clark County. (ECF No. 43.)

## II. BACKGROUND

Plaintiff brings claims for breach of a deed covenant, breach of contract, breach of fiduciary duty, and declaratory judgment in connection with Clark County's lease of land to Nevada Links. (ECF No. 1 at 7-11.) Against Nevada Links, Plaintiff asserts only claims for breach of fiduciary duty and declaratory judgment. (*Id.* at 9-10.)

In support of its claims against Nevada Links, Plaintiff alleges the following. The United States transferred approximately ninety-one acres of land to Clark County in 1999 under the Southern Nevada Public Land Management Act of 1998, Pub. L. No. 105-263, 112 Stat. 2343 ("Act"). (*Id.* at 2, 4.) The Act imposed certain obligations on Clark County if it accepted title to the land, *inter alia*: (1) to lease the land at fair market value if Clark County chose to lease it; and (2) to contribute eighty-five percent of the gross proceeds from the lease to a Department of Treasury account for various public purposes,[2] five percent of the gross proceeds to Nevada for general education, and ten percent of the gross proceeds to the Clark County Department of Aviation for the benefit of airport development and the Noise Compatibility Program. (*Id.* at 3.) The deed ("Deed") conveying the land similarly required any lease of the land to be for fair market value, with the proceeds distributed as described in the Act. (*Id.* at 4.) Clark County and the Bureau of Land Management ("BLM") signed a Memorandum of Agreement ("MOA") specifying that the term "fair market value" as used in the Act "shall be based upon the highest and best use of the property, as determined by one or more disinterested, competent real estate appraisers, licensed by the State of Nevada, using widely accepted appraisal standards." (*Id.* at 5.)

Clark County leased 154 acres of land—including approximately ninety-one acres of land that the United States transferred under the Act and the Deed—to Nevada Links

---

[2]The Act requires the United States' share of the proceeds to be used for various public purposes, including the acquisition of environmentally sensitive lands in Nevada or the Lake Tahoe Basin; capital improvements at conservation and recreation areas in Nevada; the development of a multispecies habitat conservation plan in Clark County; and the development of parks, trails, and natural areas in Clark County. (*Id.* at 3-4 (citing Act §§ 4(g)(4), 4(e)(3)(A)).)

for the development and operation of a golf course and related facilities on July 20, 1999 (the "Lease"). (*Id.* at 5.) The Lease term was fifty years from July 20, 1999, and required Nevada Links to pay rent to Clark County consisting of forty percent of net revenue. (*Id.*) Nevada Links and Clark County have amended the Lease several times, and the fourth amendment is currently in effect ("Fourth Amendment"). (*Id.*) Under the Fourth Amendment, rent was changed to a fixed annual amount of $100,000, with annual rent increases set at the lesser of two percent or the percentage increase in the consumer price index for the area. (*Id.* at 5-6.) The Fourth Amendment contains language mirroring the terms of the Act and states that "the Premises are within property subject to the provisions of the [Act] and that [Clark County] is required by the [Act] to receive 'fair market value' for all leases." (*Id.* at 6.)

Clark County eventually obtained an appraisal to determine the fair market rent, but not before agreeing to the Fourth Amendment. (*Id.* at 6-7.) Rather, Clark County agreed to the Fourth Amendment in 2011, sought BLM's approval, and then obtained an appraisal in 2013 in a further effort to secure BLM's approval. (*Id.*) The appraisal revealed that the fair market rent for the ninety-one acres of land granted under the Act was at least $2,242,000 annually. (*Id.* at 7.)

The United States alleges that the Act formed a trust relationship between the United States and Clark County and that Clark County breached its fiduciary duty by leasing the land to Nevada Links for less than fair market value. The United States further alleges that Nevada Links is liable for Clark County's breach of fiduciary duty because Nevada Links knew or should have known of Clark County's breach. Nevada Links moves to dismiss the United States' claims against it.

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does

not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

**IV.  DISCUSSION**

Nevada Links argues that the United States' claims against Nevada Links for breach of fiduciary duty should be dismissed because there is no trust relationship—or any legal relationship—between the United States and Clark County on which Nevada Links' liability could be based. (ECF No. 15 at 6.) Clark County joins in this argument.

4

(ECF No. 47 at 3 n.2.) Nevada Links further argues that, even if there were a trust relationship between the United States and Clark County, the United States has failed to plead facts sufficient to show that Nevada Links would be liable. Specifically, Nevada Links argues that the United States has not adequately alleged that Nevada Links had actual or constructive knowledge of Clark County's alleged breach of fiduciary duty. (*See, e.g.*, ECF No. 31 at 4.) The Court finds that a trust relationship exists between the United States and Clark County and that the United States has adequately alleged that Nevada Links had actual or constructive knowledge of Clark County's alleged breach of fiduciary duty.

### A. Trust Relationship Between the United States and Clark County

Courts look to the common law of trusts to guide resolution of claims related to states' management of land granted to them in trust by the United States. *Day v. Apoliona*, 496 F.3d 1027, 1034 n.10 (9th Cir. 2007) (citing *Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 637 (10th Cir. 1998)). "A trust . . . is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2.

"A trust is created when a settlor conveys property to a trustee with a manifest intent to impose a fiduciary duty on that person requiring that the property be used for a specific benefit of others." *Branson*, 161 F.3d at 633 (citing Restatement (Second) of Trusts §§ 2, 17, 23 & cmt. a). Congress may create a trust by manifesting an intent to create a fiduciary relationship. *Id.* (citing *Lassen v. Ariz. ex rel. Ariz. Highway Dep't*, 385 U.S. 458, 460 (1967)). "Congress need not use any particular form of words in expressing its intent to create a trust, and the absence of the words 'trust' or 'trustee' in the conveyance is not determinative of the question of whether Congress intended to create a trust." *Id.* (citing *Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1564 (10th Cir. 1984), *on reh'g*, 782 F.2d 855 (10th Cir. 1986), *modified*, 793 F.2d 1171 (10th Cir. 1986)). "Instead, the creation of a trust depends on whether the relevant statutory provision contains 'an

///

enumeration of duties' which would justify a conclusion that Congress intended to create a trust relationship." *Id.* (citing Restatement (Second) of Trusts § 23 cmt. a).

The parties base their arguments regarding the existence of a trust relationship on two Tenth Circuit decisions: *Branson*, 161 F.3d 619, and *Dist. 22 United Mine Workers of Am. v. Utah*, 229 F.3d 982 (10th Cir. 2000), *as amended on denial of reh'g* (Nov. 6, 2000). (ECF No. 15 at 7-8; ECF No. 25 at 7-10; ECF No. 47 at 2-4.)

In *Branson*, the Tenth Circuit found that the Colorado Enabling Act established a trust because the statute enumerated specific duties for the benefit of common schools. 161 F.3d at 634. Specifically, the statute prescribed (1) how the school lands are to be disposed (only at public sale), (2) at what minimum price ($2.50 per acre), (3) how the income from these sales is to be held (a permanent school fund), (4) what may be done with the interest on that capital holding (expenditure in the support of common schools), and (5) Congress has provided for the permanence of the benefit of these assets for the common schools. *Id.*

By contrast, in *Dist. 22*, the Tenth Circuit found that the Utah Enabling Act did not establish a trust. 229 F.3d at 990. Although the Utah Enabling Act granted fifty thousand acres for the express purpose of "a miner's hospital for disabled miners," it did not place any explicit restrictions on how the lands could be managed or disposed. *Id.* at 989-90. The Utah Enabling Act merely provided that the "lands granted by this section shall be held, appropriated, and disposed of exclusively for the purposes herein mentioned, in such manner as the legislature may provide." *Id.* The Tenth Circuit noted that the "express latitude given to the State of Utah militates against the creation of a trust." *Id.*

Nevada Links and Clark County primarily argue that the Act here is more like the Utah Enabling Act considered in *Dist. 22* than the Colorado Enabling Act considered in *Branson* because the Act here imposes "no comparable duties" to those identified in *Branson*: the Act does not establish the manner of sale, a specific minimum price, the manner in which the various recipients of the proceeds are required to hold the funds, or
///

the use of interest on those funds. (ECF No. 15 at 7; ECF No. 31 at 3-4; ECF No. 47 at 3 n.2.)

The United States counters that the Act is more like the Colorado Enabling Act considered in *Branson* because it prescribes (1) how the lands are to be disposed ("sold, leased, or otherwise conveyed"); (2) the minimum price ("fair market value"); (3) how the income is to be held (eighty-five percent allocated to a special account in the Treasury of the United States, ten percent allocated to Clark County, and five percent allocated to the state of Nevada); and (4) that the income would provide the benefits of furthering environmentally-sensitive land acquisitions and conservation projects in Nevada, as well as funding general education in Nevada and the airport's development and noise compatibility program. (ECF No. 25 at 8.)

The Court finds the United States' argument persuasive. The Act's stated purpose is "to provide for the orderly disposal of certain Federal lands in Clark County, Nevada, and to provide for the acquisition of environmentally sensitive lands in the State of Nevada." Act § 2(b). This statement of purpose alone is insufficient to manifest intent to create a trust under the reasoning of *Branson* and *Dist. 22* because it is does not enumerate specific duties. However, Section 4(g) of the Act enumerates specific duties. That portion of the Act, like the Colorado Enabling Act, prescribes a minimum price for conveyance (fair market value) as well as how the income from such conveyance is to be held, allocated, and used (for the benefit of environmentally-sensitive land acquisition, conservation projects, general education, and airport development). It is these enumerated duties in conjunction with the stated purpose of the Act that permit the Court to infer that Congress intended to create a trust.

Nevada Links and Clark County attempt to distinguish the Act from the Colorado Enabling Act on several additional grounds that are unpersuasive. First, Nevada Links and Clark County argue that the Act here is different because Clark County retained discretion to decide whether to sell the land granted to it while the Colorado Enabling Act affirmatively required Colorado to sell the land granted to it. (ECF No. 31 at 3; ECF No. 47 at 3-4.) The

Court finds this argument unpersuasive because it is not clear that the Colorado Enabling Act required land to be sold—the Colorado Enabling Act merely states that certain land "shall be disposed of only at public sale." *Branson*, 161 F.3d at 634. The plain language of the Colorado Enabling Act does not clearly require the land to be sold (though it is clear any sale would have to be public). Moreover, even if the Colorado Enabling Act required Colorado to dispose of the land, the Act here still enumerates other duties that permit the Court to infer Congress's intent to create a trust—the minimum price of conveyance and how the income from such conveyance is to be held, allocated, and used. *See* Act § 4(g).

Second, Nevada Links and Clark County argue that the Act here permits Clark County broad discretion in determining the manner in which it disposes of the land. (ECF No. 31 at 3; ECF No. 47 at 3-4.) While the Act does not restrict Clark County to "public sale" of the land like the Colorado Enabling Act (e.g., Clark County could lease the land rather than sell it), this difference is immaterial because the Act sets a floor price for all conveyances (fair market value) and dictates how the proceeds should be used. *See* Act § 4(g).

Third, Nevada Links and Clark County argue that "fair market value" is not a "minimum price." (*See* ECF No. 15 at 7; ECF No. 31 at 3; ECF No. 47 at 3 n.2.) While fair market value is variable, it is still a restraint on Clark County's ability to convey the land. It is the fact of the restraint—not its variable nature—that suggests Congress intended to create a trust.

Fourth, Nevada Links and Clark County argue that most of the Act does not govern the actions of Clark County at all. (ECF No. 31 at 3; ECF No. 47 at 3 n.2.) The Court finds this argument unpersuasive because the portion of the Act that does not govern the actions of Clark County is simply irrelevant to the determination of whether Congress manifested the intent to create a trust, particularly in light of the specific enumerated duties in the portion of the Act that do relate to Clark County.

///

///

Finally, Nevada Links and Clark County argue that the Act does not create a trust because it does not require that the land be used for a specific benefit of others. (ECF No. 15 at 8; ECF No. 47 at 3 n.2.) The Court finds this argument unpersuasive because part of the stated purpose of the Act is "to provide for the acquisition of environmentally sensitive lands in the State of Nevada." Act § 2(b). In addition, the Act specifies that income from conveyance of the land must be used for the benefit of environmentally-sensitive land acquisition, conservation projects, general education, and airport development in Nevada.

Accordingly, the Court finds that Congress manifested intent to create a trust when it passed the Act, and that a trust relationship exists between the United States and Clark County.

**B.     Nevada Links' Liability**

"[W]hen a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000). A transferee is liable, however, if he knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. *Id.* at 251.

The United States argues that the following allegations show that Nevada Links had actual or constructive knowledge and the circumstances that rendered the transfer in breach of the trust: (1) Nevada Links executed the Fourth Amendment, which expressly "recognizes that the Premises are within property subject to the provisions of the [Act] and that County is required by the [Act] to receive 'fair market value' for all leases;" (2) Nevada Links knew that the County failed to obtain an appraisal to show that the $100,000 rent was fair market value; and (3) it is reasonable to infer that a sophisticated business entity like Nevada Links should have known it was renting property for less than fair market value

///

///

///

9

when it was actually paying less than five percent of fair market rent.[3] (*See* ECF No. 25 at 11-12.)

Nevada Links responds: (1) that Clark County's failure to obtain an appraisal is immaterial because the County "conducted a public bidding process to obtain the best value the market would support;" (2) that Nevada Links' awareness of receiving a "good deal" is insufficient to establish knowledge of Clark County's alleged breach of trust; and (3) that the Court cannot infer Nevada Links' knowledge of the breach of trust from the difference between the 2013 appraisal and the Fourth Amendment's annual rent because the 2013 appraisal occurred two years after Nevada Links and Clark County executed the Fourth Amendment. (*See* ECF No. 31 at 7-8.)

The Court agrees with the United States that the factual allegations, accepted as true, show that Nevada Links knew or should have known that Clark County breached its duty of trust.[4] First, the United States' factual allegations show that Nevada Links knew Clark County was required to lease the land for "fair market value" because the Fourth Amendment expressly stated that Clark County was required to lease the land for fair market value under the Act. (ECF No. 1 at 6.) Second, the United States' factual allegations show that Nevada Links knew or should have known that it was leasing the land for less than fair market value because of the vast difference between the rent and the appraised value of the land. The Court can reasonably infer that a sophisticated party like Nevada Links would be aware that it was not paying fair market rent when fair market rent was more than twenty-two times what Nevada Links was paying. (*See id.* at 7.)

Nevada Links' first argument is irrelevant—it is not Clark County's failure to obtain an appraisal that permits the Court to reasonably infer that Nevada Links knew that it was paying rent far below fair market value. Rather, it is the extreme discrepancy between the

---

[3] The United States additionally seeks judicial notice of "admissions made by Nevada Links on the public record at a Board of County Commissioners meeting," but the Court finds it unnecessary to consider those alleged admissions. (ECF No. 25 at 12-13.)

[4] Accordingly, the Court will not consider the United States' alternative argument that Nevada Links is liable for Clark County's breach of trust as a participant in the breach (to the extent that argument supports a distinct theory of liability (*see* ECF No. 31 at 6)).

fair market rent ($2,242,000 annually) and the actual rent ($100,000 annually) that permits the inference. (*See id.*)

Nevada Links' second argument is unpersuasive because the case on which it is based, *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161 (D.N.M. 2010), is readily distinguishable. In *Begay*, members of the Navajo Nation sued the Secretary of the Interior and various corporations when the Bureau of Indian Affairs ("BIA") granted rights-of-way over the plaintiffs' land to the corporations. *Id.* at 1174-75. The plaintiffs alleged that the United States breached its fiduciary duties by conveying the rights-of-way for less than fair market value. *Id.* at 1175. The plaintiffs sought to hold the corporations liable for breach of constructive trust, arguing that the corporations knew or should have known about the United States' breach of trust. *Id.* at 1176, 1206. The court found that the plaintiffs had not asserted sufficient facts to establish a plausible claim against the corporations because the court could not "discern, from the facts alleged, precisely what the [p]laintiffs allege that the [corporations] knew." *Id.* at 1207. The court noted that it lacked "a basis to compare the prices that the [corporations] paid to the fair market value" and that there were no allegations showing that the corporations "would have known of the restrictions upon the [United States] to provide the [p]laintiffs with no less than fair market value for the rights-of-way." *Id.* at 1207.

By contrast, the factual allegations here permit the Court to compare the price that Nevada Links paid with the fair market value. The United States alleges that Nevada Links paid rent of $100,000 on land that was appraised at a fair market rent of $2,242,000. (ECF No. 1 at 7.) In addition, the United States' Complaint shows that Nevada Links would have or should have known of the restrictions the Act imposed on Clark County because the Fourth Amendment expressly incorporated the Act's restrictions. (*Id.* at 6.)

Nevada Links' third argument is unpersuasive because the timing of the appraisal is irrelevant. Accepting the United States' allegations as true, the appraisal shows that the fair market rent of the land is $2,242,000. (*Id.* at 7.) Given the extreme disparity between
///

that figure and Nevada Links' actual rent, it should have been obvious to Nevada Links that it was paying far less than fair market rent.

Accordingly, the Court finds that the United States has adequately pleaded facts from which the Court can reasonably infer that Nevada Links may be liable for breach of fiduciary duty.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Nevada Links' motion to dismiss (ECF No. 15) is denied.

DATED THIS 30th day of August 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE