David J. Lazerwitz (*pro hac vice*)
California Bar No. 221349
dlazerwitz@fbm.com
Anthony Schoenberg (*pro hac vice*)
California Bar No. 203714
aschoenberg@fbm.com
Emily M. Lieban (*pro hac vice*)
California Bar No. 303079
elieban@fbm.com
Kelly M. Matayoshi (*pro hac vice*)
California Bar No. 284596
kmatayoshi@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Dennis L. Kennedy, Bar No. 1462
DKennedy@BaileyKennedy.com
Joseph A. Liebman, Bar No. 10125
JLiebman@BaileyKennedy.com
BAILEY KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821

Attorneys for Defendant
NEVADA LINKS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF CLARK, et al.,<br><br>Defendant. | Case No. 2:17-cv-02303-MMD-PAL<br><br>**NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>ORAL ARGUMENT REQUESTED<br><br>Date of Hearing:<br>Time of Hearing:<br>Crtrm:<br><br>The Hon. Miranda M. Du<br><br>Trial Date: TBD |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

34938\6912453.3

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), Defendant Nevada Links, Inc. ("Nevada Links") respectfully requests an order compelling Plaintiff United States of America ("Plaintiff" or "United States") to produce documents responsive to Nevada Links' First Set of Requests for Production of Documents. This Motion to Compel is based on the following memorandum of points and authorities and documents filed with this Motion. Given that Nevada Links' contemporaneously filed Opposition to the United States' Motion for Protective Order addresses a similar topic to the present Motion, Nevada Links respectfully asks this Court to set the hearing date on this Motion for October 2, 2018 so the two motions may be heard together.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The United States brings a claim against Nevada Links alleging that it somehow breached a fiduciary duty owed by an entirely different party – the County of Clark ("County") – to the United States. The premise of the United States' claim is its assertion that the County has charged below-market rent to Nevada Links under a land lease, part of which covers land that the Department of the Interior conveyed to the County 20 years ago under Section 4(g) of the Southern Nevada Public Land Management Act ("SNPLMA" or the "Act"). The United States now alleges, based on an appraisal it conducted without Nevada Links' knowledge or involvement, that the rent charged to Nevada Links does not satisfy the "fair market value" provision in Section 4(g) of SNPMLA  However, discovery has revealed that the Nevada Links lease was only one of 28 similar leases that the County entered into in the late 1990s and early 2000s covering lands that the Department of the Interior conveyed to it under Section 4(g) of SNPLMA. These other leases had nearly identical rent provisions to the Nevada Links lease, and the United States has conducted appraisals concerning all of these other leases. But unlike Nevada Links, the United States has not brought suit against the County or the lessees under these other leases.

By this motion, Nevada Links seeks to compel the production of documents in response to its First Set of Requests for Production, Requests 4 and 13. These requests were served on Plaintiff United States of America ("Plaintiff") on January 12, 2018. Nevada Links' Requests 4

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

34938\6912453.3

and 13 seek production of two categories of documents: (1) all documents that relate to leases under the SNPLMA; and (2) all documents related to auctions between 2012 and 2017 for land transferred to the County under Section 4(g) of the SNPLMA.

These documents are relevant for several reasons. First, Nevada Links is entitled to explore why its lease was singled out and targeted in this lawsuit when there are 27 other nearly identical leases that the County entered into on SNPMLA land. Second, Nevada Links is entitled to see and evaluate the United States' methodology in appraising the 27 other leases. To the extent that this methodology differs from that used in evaluating Nevada Links' lease, it is relevant to Nevada Links' evaluation of the United States' appraisal. Third, information regarding the performance of the other leases, appraisals concerning the other leases, and auctions of the land that was the subject of the other leases is relevant to Nevada Links' expert in evaluating the Nevada Links lease. Fourth, the United States itself admitted to the relevancy of the other leases by itself asking questions about them in deposition. Having opened the door to such discovery, the United States cannot now close it behind them.

In April 2018, Nevada Links met and conferred with the United States regarding the United States' responses to Requests 4, 13, and 14. The United States subsequently agreed to produce copies of the other leases as well as appraisals from the two auctions of SNPLMA land. The production satisfied Request 14, and partially satisfied Request 13. Nevada Links accepted this production as a temporary compromise, but Nevada Links expressly reserved its right to later move to compel on these topics if warranted by subsequent discovery or factual development. During the month of August, the parties took depositions of most of the key witnesses in the case. Those deposition revealed that at the same time it was performing appraisals concerning the Nevada Links lease, it was also performing appraisals concerning the 27 other leases. Given this new information, and in light of the rapidly approaching close of fact discovery, Nevada Links now requests an order directing the United States' full and immediate compliance with Nevada Links' long-overdue document requests.

## II.   RELEVANT FACTUAL BACKGROUND

The SNPLMA was passed on October 19, 1998, and authorized the conveyance of land

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

2

34938\6912453.3

held by the United States to the County. It further provides that if the County leases or sells land conveyed under the Act, it must obtain "fair market value." On March 30, 1999, the United States conveyed certain land to the County that included approximately 90 acres of land that the County subsequently leased to Nevada Links for the purpose of creating the Bali Hai Golf Club. The Nevada Links lease was a participatory lease under which Nevada Links would pay the County 40% of its net revenue rather than a fixed amount. The lease significantly underperformed due to a variety of factors, and in 2011, the County and Nevada Links amended the lease (called the Fourth Amendment) to provide for a fixed rental, as the County expressed a desire for a steady income stream rather than the risk-sharing framework of a participatory lease.

Meanwhile, from 2001 to 2012, the County had entered into 27 other leases of land conveyed pursuant to Section 4(g) of the SNPLMA. All of these were participatory leases similar to the Nevada Links lease, except requiring a remittance of 50% of net revenue rather than 40%. Nevada Links learned during depositions in August that the United States' Office of Valuation Services conducted retrospective appraisals concerning the 27 other leases. Nevada Links was also aware that two of the other SNPLMA properties were auctioned off by the County. Prior to the auction, appraisals were conducted of the two auctioned SNPLMA properties.

Despite the existence of 27 other participatory leases, the United States chose to target and sue Nevada Links, claiming that its lease as amended failed to meet the fair market value requirement under SNPLMA. The recent depositions have revealed that in or around 2012, the United States requested that its Office of Valuation Services conduct an appraisal of the Nevada Links lease. After the appraisal was complete, the Office of Valuation Services was then requested to conduct a retrospective appraisal on the Nevada Links lease to determine the supposed fair market value at the time the lease was executed in 1999. Ultimately, the United States rejected the terms of the Fourth Amendment to the lease. On September 7, 2017, the United States filed a lawsuit against Nevada Links and the County, claiming Nevada Links breached its fiduciary duty and seeking declaratory judgment.

### III. RELEVANT PROCEDURAL BACKGROUND

On January 12, 2018, Nevada Links served its First Set of Requests for Production – the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

3

34938\6912453.3

full requests are attached to this motion as **Exhibit A**. The Requests relevant to this motion are Requests 4 and 13. Request 4 asks for, "All DOCUMENTS that relate to leases and payments received by YOU under the SNPLMA." Request 13 asks for, "All DOCUMENTS that relate to auctions between 2012 and 2017 for lands that YOU transferred to the COUNTY."

Even before responding, the United States and Nevada Links had a lengthy back and forth on Requests 4, 13, and 14 dealing with the other leases and auctions, objecting that they were neither relevant nor proportional to the needs of the case. In response, Nevada Links explained that the United States has made a central issue in the case whether the County obtained fair market value for the leased land, and that the requested documents are relevant to the issue of fair market value. Nevada Links then unilaterally offered to narrow the scope of Request 4, but the United States rejected this compromise.

On February 12, 2018, the United States served its responses to Nevada Links' First Set of Requests for Production. In relevant part, the United States responded to Nevada Links' Request 4 as follows: "The United States further objects that the documents sought concern leases and payments not at issue in this case and not relevant to any claim or defense in this action; and counsel for Nevada Links knew or should have known that the Request is overbroad, imposing undue burden or expenses considering the needs of the case." The United States similarly responded to Requests 13 and 14, and further noted that on the basis of the above objection, it would not produce documents responsive to those Requests. The United States' full responses are reproduced as **Exhibit B** to this motion.

On April 9, 2018, Nevada Links met and conferred with the United States on Requests 4, 13, and 14. In that letter, Nevada Links again explained the relevancy of these documents to determining the lease's fair market value by providing comps. While the United States continued to insist that Nevada Links had not explained the relevancy of its requests, the parties ultimately agreed to a compromise to avoid a motion to compel at that time. On May 11, 2018, the United States agreed to produce "copies of the leases sought and the copies of the auction appraisals as provided to [it] by the County." Nevada Links further affirmed that it "retains its right to seek further discovery and file a motion to compel after review of the above documents." The United

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS - Case No. 2:17-
cv-02303-MMD-PAL

4

34938\6912453.3

States ultimately produced the agreed upon other leases and auction appraisals on June 21, 2018.

In August 2018, the parties engaged in a number of depositions of United States, County, and Nevada Links employees and representatives. Despite its insistence that the other leases were irrelevant, during these depositions the United States asked County witnesses Donald Burnette and Steve Sisolak a multitude of questions regarding the other leases. For example, the United States asked Mr. Burnette whether he was, "aware that BLM had engaged in the process of doing retrospective appraisals of these properties itself?" **Exhibit C**, Burnette Depo. at 78:6-8; *see also id.* at 19:23-20:20; 24:7-25:6; 51:11-53:4. And in Mr. Sisolak's deposition the United States asked the following:

> Q. What was your understanding of the county's participatory leases?
>
> A. We had some participatory leases and some sales that we did. Participatory leases we were not guaranteed anything, but we shared in the profits.
>
> Q. Do you recall how many participatory leases the county had?
>
> A. I do not.
>
> Q. Did you ever review the terms of those participatory leases with anyone at the county?
>
> A. I don't recall.
>
> Q. Do you know if these participatory leases typically guaranteed a rate of return?
>
> MR. HARDIN: Object to the form.
>
> THE WITNESS: From what you told me, they guaranteed a rate of return to the developer.
>
> BY MR. HSU:
>
> Q. Yes. That's for this lease. I'm asking about other participatory leases and participatory leases in general.
>
> A. I don't know.

**Exhibit D**, Sisolak Depo. at 40:7-41:2; *see also id.* at 76:22-77:22.

Nevada Links has met and conferred with the United States further on this topic as part of its 30(b)(6) deposition notice to the United States, as outlined further in Nevada Links' contemporaneously filed Opposition to Protective Order. As the parties have been unable to agree

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

5

34938\6912453.3

upon this topic, Nevada Links now files this motion to compel on Requests 4 and 13. These documents fall squarely within the disputed requests for production, but have not been produced.

## IV. ARGUMENT

As a preliminary matter, the scope of discovery under the federal rules is broad, and the United States bears the heavy burden of showing why such discovery should not be permitted. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevancy under Rule 26(b)(1) is liberally construed. *U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 431-32 (D. Nev. 2006). Indeed, Rule 26 encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues. *See id.* at 351. In light of this liberal policy, the entity resisting discovery bears a "heavy burden" to show why the Court should deny discovery. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The United States cannot meet its burden for several reasons described below.

### A. The Requested Documents May Demonstrate Why Nevada Links Was Targeted In This Lawsuit.

The Nevada Links lease was one of 28 leases entered into by the County covering land that the United States conveyed to the County under the SNPLMA. All were participatory leases with similar terms. All were entered into in a similar time period: the late 1990s through the early 2000s. However, Nevada Links was the only SNPLMA lease to be targeted, challenged, and targeted in a lawsuit (in which the United States purports to seek approximately $65 million in damages). Nevada Links is entitled to explore why its lease was treated so different than the other leases. If Nevada Links was unfairly or arbitrarily targeted, it would certainly be entitled to raise this issue at trial.

In response, the United States' lawyers insist that the Nevada Links lease drew focus when it executed a Fourth Amendment to the lease with the County. However, Nevada Links need not be required to rely on the assurances of the United States' lawyers on this matter. Nevada Links is

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

6

34938\6912453.3

entitled to see for itself the documents relating to these other SNPLMA leases and auctions so it may draw its own conclusion as to why Nevada Links was targeted. This is especially true where the United States has objected to a FRCP 30(b)(6) deposition on these topics, making document production the only way to evaluate this issue.

### B. The Retrospective Appraisals Conducted On The Other Leases May Demonstrate Discrepancies In the Office of Valuation Services' Methodology.

Encompassed in Nevada Links' requests are the retrospective appraisals that were conducted concerning the 27 other leases. Recent deposition testimony revealed that the United States used the Office of Valuation Services to conduct retrospective appraisals concerning all 27 other leases at the same time it was conducting such an appraisal concerning the Nevada Links lease. Thus, the process to conduct these retroactive appraisals is apparently the same process that was applied to the Nevada Links lease.

If the United States has been inconsistent in how it has evaluated these other leases, it would certainly be relevant to Nevada Links' defense. In order to determine whether the United States has been consistent in evaluation of this lease, Nevada Links requires access to the United States' retrospective appraisals prepared for the 27 other properties transferred to the County under Section 4(g) of the SNPLMA. To that end Nevada Links has requested "all documents that relate to leases . . . under the SNPLMA" (Request 4), including the retrospective appraisals the United States has conducted for other leases under SNPLMA. The protocols applied by the United States in evaluating those leases are directly relevant in assessing the validity of the United States' evaluation of this lease. Accordingly, these documents fall directly within the broad purview of Rule 26.

### C. Other Properties' Appraisals Are Relevant To Nevada Links' Lease Valuation.

A major inquiry in this case is whether the County leased land to Nevada Links for less than "fair market value" as stated in the SNPLMA. Each party is expected to call experts to opine on issues concerning "fair market value." Appraisals by the United States concerning other similar leases are relevant data points that should be considered by the parties' experts. The United States' reluctance to allow the experts to even see this information suggests that the United

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL

7

34938\6912453.3

States is concerned about what the information might show, which is obviously *not* a basis to deny discovery of relevant information.

Furthermore, while the United States contends that the Nevada Links lease was below fair market value, how other SNPLMA properties performed under participatory leases is relevant to valuing the Nevada Links lease. Nevada Links believes that some properties under-performed, while others over-performed. Such information is relevant – or at a minimum discoverable – as it again raises the question of why Nevada Links was singled out.

### D. The United States Deposition Questions Opened The Door To Inquiries Into The Other SNPLMA Leases.

Perhaps most telling is the fact that the United States itself asked questions about the 27 other leases during depositions. During the depositions of County witnesses Donald Burnette and Steven Sisolak, the United States devoted significant time into probing the other leases. For example, in Mr. Sisolak's deposition he was asked directly, "What was your understanding of the county's participatory leases?" *See* Ex. D, Sisolak Depo. at 40:7-41:2. This initiated a long line of questions regarding the other participatory leases. Mr. Sisolak was asked specifically about the terms of these leases and their "rate of return."

Having inquired about the participatory leases in deposition, the United States cannot now credibly argue that they are beyond the scope of discovery. It would be patently unfair to allow the United States to explore the other leases in deposition but then bar Nevada Links from discovery on them. As such, the United States cannot at this point reverse course and deny Nevada Links documents on these topics.

## V. CONCLUSION

For the foregoing reasons, Nevada Links requests an order compelling the United States' full and immediate compliance with Nevada Links' Requests for Production Nos. 4 and 13.

Dated: September 10, 2018         FARELLA BRAUN + MARTEL LLP

By:    /s/ Kelly M. Matayoshi
         Kelly M. Matayoshi

Attorneys for Nevada Links, Inc.

NEVADA LINKS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS - Case No. 2:17-cv-02303-MMD-PAL     8     34938\6912453.3