UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:17-cv-02303-MMD-BNW |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| CLARK COUNTY OF, NEVADA LINKS, INC., | |
| Defendants. | |

## I.   SUMMARY

Plaintiff the United States of America sued Defendants County of Clark (the "County") and Nevada Links, Inc. for leasing the land upon which Nevada Links built the Bali Hai golf course near the Las Vegas strip to Nevada Links for below-market rent, in alleged contravention of the County's statutory, contractual, and fiduciary duties to Plaintiff. Before the Court are the parties' cross-motions for summary judgment.[1] (ECF Nos. 130, 131, 134.) Because the Court agrees with Defendants that Plaintiff's claims

---

[1] The Court also reviewed the associated briefing, joinders, declarations, and exhibits. (ECF Nos. 132, 133, 135, 136, 137, 140, 141, 143, 144, 145, 146, 147, 148, 149, 150, 152, 153, 154, 155, 156, 157, 158, 159, 160.) In addition, Nevada Links filed an administrative motion to strike its reply in support of its motion for summary judgment (ECF No. 154). (ECF No. 161.) Nevada Links explains a technical error caused it to file the wrong version of its reply brief, and asks the Court to consider the amended version (ECF No. 160) instead of the original (ECF No. 154). (ECF No. 161.) Plaintiff responds to note that the amended version of Nevada Links' reply brief is nearly three pages longer than the original version. (ECF No. 162.) Nevada Links replies by emphasizing that its filing error was an unintentional, administrative error (ECF No. 163), and submits a sworn declaration from its counsel in support (ECF No. 164). In the absence of any evidence to the contrary, the Court takes Nevada Links' counsel at his word and concludes this was an honest mistake. The Court accordingly finds good cause to grant Nevada Links' administrative motion to strike, and will do so. The Court thus reviewed the amended version of Nevada Links' reply (ECF No. 160) instead of the original version (ECF No. 154).

are time barred, and as further explained below, the Court will grant Defendants' motions in pertinent part, and deny Plaintiff's motion, resolving this case in Defendants' favor.

**II.   BACKGROUND[2]**

In 1999, Plaintiff transferred 5,000 acres of vacant federal land near McCarran International Airport in Las Vegas to the County under the Southern Nevada Public Land Management Act of 1998, Pub. L. No. 105-263, 112 Stat. 2343 (1998) (the "Act"). (ECF No. 1 at 2-3.) Before then, United States Department of the Interior's Bureau of Land Management ("BLM") had administered the land. (*Id.* at 3.) The Act required the County to lease this land for fair market value. (*Id.*) The Act also required the County to pay 85% of the money it generated by leasing the land to BLM, which BLM would spend on land acquisition, conservation, and the development of parks and trails. (*Id.* at 3-4.)

In accordance with the Act, Plaintiff, through BLM, conveyed 91 acres of land to the County by a deed dated March 30, 1999 (the "Deed") that the County now leases to Nevada Links for the Bali Hai golf course. (*Id.* at 4.) Like the Act, the Deed also required the County to lease the land for fair market value, and required the County to pay a portion of the proceeds to BLM. (*Id.*)

On July 20, 1999, the County agreed to lease approximately 154 acres of land to Nevada Links for the Bali Hai golf course (the "Lease"). (*Id.* at 5.) The Lease specified that the County would not receive any fixed rent payments, but would instead receive 40% of "net revenue," "defined as total revenue minus deductions for approved budgeted expenses, capital improvement expenditures, a management fee, debt service, and a reserve for maintenance and operations."[3] (*Id.* at 5.) The County and Nevada Links have amended the lease four times. (*Id.*)

In 2004, the County and BLM signed a Memorandum of Agreement (the "MOA"), which, in pertinent part, reiterated the fair market rent requirement and stated that fair

---

[2]The following facts are undisputed unless otherwise noted.

[3]The parties generally refer to these provisions as the participatory rent provisions. For convenience, the Court will as well.

market rent must be determined by one or more disinterested real estate appraisers, licensed by the State of Nevada, who perform their appraisal using widely accepted appraisal standards. (*Id.* at 4-5.)

Much of the parties' dispute centers on the County and Nevada Links' fourth amendment to the Lease (the "Fourth Amendment"), which, in pertinent part: (1) again restated that the land must be rented for fair market value; (2) switched the rent from a participatory rent agreement to a fixed rent of $100,000 per year. (*Id.* at 5-6.) The County and Nevada Links negotiated and signed the Fourth Amendment in 2011. (*Id.* at 5-7.)

From the commencement of the Lease in 1999 to 2011, Nevada Links never paid the County any money in rent under the participatory rent provisions in the Lease. (ECF Nos. 131 at 9, 144 at 11.) The Act's program manager at BLM, Merv Boyd, submitted a declaration stating he became aware of the Lease, and that Nevada Links was not paying any rent under it, in 2005 or 2006. (ECF No. 133-1 at 98.) Similarly, Ronnie Hawkins, who was working as the lead appraiser at the BLM's pertinent office at the time, testified at his deposition that he became aware of the Lease, along with the fact that it was generating no rent money, in a meeting with Boyd sometime in 2005 or 2006. (ECF No. 133-1 at 107-09.) Plaintiff nonetheless takes the position that it was unaware of the Lease until August 2010. (ECF Nos. 130-28 at 7, 144 at 11-12.) This dispute is further discussed in Section IV *infra*.

On August 11, 2011, the County sent BLM a copy of the proposed Fourth Amendment for approval (ECF No. 133-1 at 135), which said the rent would be $100,000/year (*id.* at 149). (*See also* ECF No. 144 at 12.) On September 6, 2011, the County's Board of Commissioners approved the Fourth Amendment. (ECF Nos. 131 at 10, 144 at 12.) That same month, the County sought BLM's explicit approval of the Fourth Amendment, but BLM eventually declined because BLM obtained an appraisal indicating that $100,000 per year was well below fair market rent. (ECF No. 131 at 11-13.) Thus began a dispute about fair market rent for the Bali Hai golf course land that eventually led to this lawsuit. (*Id.* at 12-13.)

Plaintiff filed suit on September 1, 2017. (ECF No. 1.) Plaintiff asserts the following claims against the County: (1) breach of the Deed covenant (*id.* at 7-8); (2) breach of the MOA (*id.* at 8-9); (3) breach of fiduciary duty (*id.* at 9); and (4) declaratory judgment requiring the parties to renegotiate the Lease (*id.* at 10). Against Nevada Links, Plaintiff asserts a breach of fiduciary duty (transferee and participant) claim (*id.* at 9-10), and the same declaratory judgment claim Plaintiff asserts against the County, asking that the Court require the County and Nevada Links to renegotiate the Lease (*id.* at 10).

The Court previously denied Nevada Links' motion to dismiss Plaintiff's fiduciary duty claim asserted against it, finding in pertinent part that: (1) the Act created a trust relationship between Plaintiff and the County (ECF No. 50 at 9); and (2) Nevada Links knew or should have known the County breached its duty of trust when it entered into the Fourth Amendment with Nevada Links (*id.* at 10).

## III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*,

391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, *et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**IV.    DISCUSSION**

Because the Court finds Defendants' statute of limitations arguments case-dispositive, it declines to address the parties' other arguments in their motions. As noted above, the Court agrees with Defendants that Plaintiff waited too long to file this case. Thus, regardless of the merits of Plaintiff's case, the Court must grant summary

5

judgment in Defendants' favor. The Court first addresses the parties' arguments as to which statute of limitations applies, and then whether Plaintiff timely filed this case in light of the key question of when Plaintiff knew or had reason to know of the injury forming the basis for this suit. *See United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1249 (9th Cir. 1988) ("*Gavilan*") (explaining that the answer to this question determines when the statute of limitations clock begins running under 28 U.S.C. § 2415).

To start, the County agrees with Plaintiff that the six-year statute of limitations provided in 28 U.S.C. § 2415(a) applies to Plaintiff's contract-based claims asserted against the County. (ECF Nos. 130 at 29, 131 at 19.) However, the parties dispute whether the same statute of limitations applies to Plaintiff's breach of fiduciary duty claims—both the County and Nevada Links argue the three-year statute of limitations found in 28 U.S.C. § 2415(b) applies to those claims. (ECF Nos. 131 at 18, 134 at 22-26.) Plaintiff counters that the six-year statute of limitations established in 28 U.S.C. § 2415(a) also applies to its breach of fiduciary duty claims. (ECF Nos. 143 19-24, 144 at 26-29.) The Court agrees with Plaintiff on this point. Thus, as further explained below, all of Plaintiff's asserted claims are subject to the six-year statute of limitations established in 28 U.S.C. § 2415(a).

"Congress, in establishing a statute of limitations for government claims, assigned time periods according to the common law division of actions." *Fed. Deposit Ins. Corp. v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1306 (9th Cir. 1989) ("*FDIC*") (citation omitted). Claims based on "any contract express or implied in law or fact" must be brought within six years, while tort claims must be brought within three years. *See* 28 U.S.C. § 2415(a)-(b). To determine which limitations period applies, courts generally characterize the government's claim as either a contract or quasi-contract claim, or a tort claim. *See FDIC*, 884 F.2d at 1306-07 (citing *United States v. Neidorf*, 522 F.2d 916, 919 (9th Cir. 1975), *cert. denied*, 423 U.S. 1087 (1976)). Like contract claims, quasi-contract claims are also subject to the six-year statute of limitations. *See*

*id.* Further, "when there is a 'substantial question' which of two conflicting statutes of limitations to apply, the court should apply the longer." *Id.* at 1307 (citation omitted).

In *FDIC*, the Ninth Circuit categorized a breach of fiduciary duty claim as contractual because at least a substantial question existed as to the statue of limitations that applied, and applied the six-year statute of limitations. *See id.* at 1307. To reach this conclusion, the Ninth Circuit pointed both to the fact that several other courts had determined that a breach of fiduciary duty claim sounded in contract, and to the presumption that statutes of limitations must be interpreted in the light most favorable to the government when they are ambiguous. *See id.*; *see also id.* at 1309. The Ninth Circuit also emphasized that the FDIC's complaint specifically referred to the oath of office taken by bank officers and directors in connection with their fiduciary duties to reinforce its conclusion that the fiduciary duty claim at issue in that case was essentially contractual, and therefore subject to the six-year statute of limitations. *See id.* at 1307.

*FDIC* strongly suggests the Court should apply the six-year statute of limitations to Plaintiff's breach of fiduciary duty claims. As alleged in Plaintiff's Complaint, the fiduciary duties the County allegedly failed to uphold are based on the Deed and the MOA, based, in turn, on the Act. (ECF No. 1 at 3-5, 9.) Nevada Links' involvement in the case is also predicated on a contract—the Lease. (*Id.* at 5-7, 9-10.) Moreover, the Court previously denied Nevada Links' motions to dismiss Plaintiff's breach of fiduciary duty claims asserted against it because the Court found the Act created a trust relationship between Plaintiff and the County (ECF No. 50 at 9), and Nevada Links knew or should have known the County breached its duty of trust to Plaintiff when Nevada Links entered the Fourth Amendment, both because the Fourth Amendment explicitly mentioned the Act, and because of the extreme discrepancy between the rent Nevada Links agreed to, and what would have been fair market rent (*id.* at 10). Thus, Defendants' alleged breaches of their fiduciary duties are best characterized as contractual or quasi-contractual. The six-year statute of limitations in 28 U.S.C. § 2415(a) therefore applies to Plaintiff's breach of fiduciary duty claims against both Defendants. *See FDIC*, 884 F.2d

at 1306-07; *see also Neidorf*, 522 F.2d at 918-920 (finding the six year statute of limitations applied to the plaintiff's claims for "fraudulent conveyance and the liability of a shareholder to a creditor of the corporation" because they were based upon quasi-contract rather than tort).[4] At the least, there is a substantial question that requires the Court to apply the six year statute of limitations here. *See FDIC*, 884 F.2d at 1306-07. And this is especially the case because the Court must give Plaintiff the benefit of the more favorable limitations period to the extent there is any ambiguity. *See id.* at 1307, 09; *see also Bank of Am., N.A. v. Woodcrest Homeowners Ass'n*, 381 F. Supp. 3d 1280, 1286 n.3 (D. Nev. 2019), *appeal dismissed sub nom. Bank of Am., N.A. v. Airmotive Investments, LLC*, Case No. 20-15631, 2020 WL 3866914 (9th Cir. July 8, 2020) (stating that applying the "longer limitations period aligns with Ninth Circuit's guidance on conflicting statutes of limitations.").

But while the Court finds that the six-year statute of limitations in 28 U.S.C. § 2415(a) applies to all of Plaintiff's claims, that limitations period expired before Plaintiff filed suit on September 1, 2017. (ECF No. 1.) Determining whether the limitations period expired requires a determination of when it started running. The 28 U.S.C. § 2415(a) clock starts running "once the facts making up the 'very essence of the right of action' are reasonably knowable[.]" *Gavilan*, 849 F.2d at 1250 (*quoting United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir. 1984)). Thus, the key inquiry is whether Plaintiff discovered—or should reasonably have discovered—it had a claim against Defendants

---

[4]Nevada Links relies on *Neidorf* to argue the three-year statute of limitations applies, but that reliance is misplaced. (ECF No. 134 at 22-23.) Nevada Links specifically relies on *Neidorf* to argue that tort claims are those that arise from duties not based on a consensual relationship between the parties. (*Id.* at 23.) Thus, Nevada Links argues, the Court should apply the three-year statute of limitations to Plaintiff's claims against it because Nevada Links had no consensual relationship with Plaintiff, and Plaintiff's claims against Nevada Links are therefore tort claims. (*Id.*) But *Neidorf* does not support this argument. *See* 522 F.2d at 918. Indeed, the *Neidorf* court specifically stated that a consensual relationship is not required for quasi-contractual liability. *See id.* The *Neidorf* court also found the six-year statute of limitation applied. *See id.* at 919-920.

8

more than six years before September 1, 2017.[5] *See id.* The Court must consider the totality of the circumstances in making this determination. *See id.*

The totality of the circumstances present here leads the Court to conclude Plaintiff knew or should have known of the essence of its right of action against Defendants more than six years before September 1, 2017. The essence of Plaintiff's claim is that the County agreed to rent land to Nevada Links well below fair market value, though both the County and Nevada Links knew the County was required by both statute and contract to rent much of the land in question at fair market value. (ECF No. 1.) Thus, the key question for statute of limitations purposes—slightly rephrased—is when Plaintiff learned or should have learned that the County was renting the land for the Bali Hai golf course to Nevada Links for below fair market rent.

Plaintiff learned Nevada Links was paying below fair market rent to the County more than six years before Plaintiff filed suit. First, it is undisputed that Nevada Links never paid any rent to the County from 1999 through 2011, when the County and Nevada Links negotiated the Fourth Amendment. (ECF No. 144 at 11-13.) Defendants make the logical argument that if $100,000 per year is below fair market rent, $0 per year is certainly well below fair market rent. (ECF Nos. 131 at 20-21, 134 at 24-26.) The Court agrees. Common sense compels a finding that $0 per year is below market rent for a large property right off the Las Vegas strip. Plaintiff nonetheless responds that it is only challenging the Fourth Amendment, and not the participatory rent provisions in the prior versions of the Lease.[6] (ECF Nos. 143 at 23-24, 144 at 28-29.) However, Plaintiff's

---

[5]While the Court must also "exclude periods during which 'facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances[,]'" an exclusion intended for situations involving fraud, no party argues that such an exclusion applies here. *Gavilan*, 849 F.2d at 1249 (citations omitted).

[6]Plaintiff also proffers evidence to the effect that the County and Nevada Links expected the County would receive more money under the participatory lease terms than they would under a standard ground lease at the time they entered into it, but that

argument impermissibly sidesteps the inquiry the Court must engage in—when Plaintiff knew or had reason to know "of the injury that is the basis of the action." *Gavilan*, 849 F.2d at 1249. The inquiry does not depend on Plaintiff's intent, or even knowledge alone, because it includes whether the government 'had reason to know.' *See id.* Moreover, Plaintiff's theory of the case is that Plaintiff was injured when the County agreed to lease land to Nevada Links for below fair market rent. Thus, that must be the moment when the injury occurred—before the County and Nevada Links agreed to the Fourth Amendment. The Court is therefore unpersuaded by Plaintiff's attempt to challenge only the Fourth Amendment, but not the rest of the Lease modified by the Fourth Amendment.

Indeed, the *Gavilan* court rejected the government's argument that "the statute of limitations should not have started to run until it completed its own audit[,]" instead finding the limitations period began when the government first learned of the defendant's overpayments—before the government could calculate the exact amount of those overpayments. *See* 849 F.2d at 1249–50. "Parties are not entitled to delay instituting a claim until they know the exact dollar amount[.]" *Id.* at 1249. In other words, the *Gavilan* court found the government's own delay did not toll the statute of limitations. Similarly, here, the 28 U.S.C. § 2415(a) limitations clock started running once Plaintiff knew or should have known that Nevada Links was paying below fair market rent to the County. Under *Gavilan*, Plaintiff cannot selectively target the Fourth Amendment to trigger a favorable statute of limitations analysis.

Second, the evidence before the Court shows that Plaintiff learned Nevada Links was paying below fair market rent before September 6, 2011, when Plaintiff argues the 28 U.S.C. § 2415(a) limitations clock began running. (ECF No. 143 at 24.) Defendants proffer a declaration from the Act's program manager at BLM, in which Boyd swears that

---

evidence does not contradict the evidence discussed *infra* showing that Plaintiff later learned the Lease was not generating any money. (ECF No. 143 at 23.)

he became aware of the Lease in 2004 or 2005, and learned at that time that no rent had been paid under the Lease. (ECF Nos. 131 at 19, 133-1 at 98, 134 at 21.) Defendants further proffer the deposition testimony of Hawkins, who worked as the lead appraiser for the BLM office in Las Vegas, where he states he became aware of the Lease at a meeting in 2005 or 2006, where he also learned that BLM had not received any payments under the Lease. (ECF No. 133-1 at 108.) The job titles of these witnesses suggest that they would know.

Plaintiff attempts to create a dispute of fact regarding Boyd and Hawkins' testimony by referring to its own interrogatory response, in which Plaintiff states that the declaration and deposition testimony "lack specificity and are unsupported by any documents produced by any party in this case, [and thus] they do not change the United States' position that it was unaware of the Lease until August 2010." (ECF Nos. 144 at 11-12, 130-28 at 7.) But Plaintiff does not point to any competing or contradictory testimony or other evidence, merely questioning the credibility of Defendants' evidence through a statement by Plaintiff's counsel. (*Id.*) This does not create a dispute of fact. *See, e.g.*, *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (stating that a "court must not make any credibility determinations" at summary judgment, and that evidence such as conflicting testimony creates a genuine dispute rendering resolution on summary judgment inappropriate).

Further, and as Defendants argue (ECF Nos. 131 at 20, 134 at 25), Plaintiff admits in the above referenced interrogatory response that it became aware of the Lease in August 2010, or more than six years before it filed suit. Plaintiff also does not dispute the County was never paid any money under the Lease prior to the Fourth Amendment. (ECF No. 144 at 11.) The evidence before the Court therefore undisputedly shows Plaintiff knew Nevada Links was not paying the County—and, by extension, BLM—any money under the Lease somewhere between 2004 and 2006, or, at the latest, in August 2010. As the essence of Plaintiff's injury is the underpayment of rent,

the clock began running on Plaintiff's claim at one of these times. *See Gavilan*, 849 F.2d at 1249-50.

Third, and alternatively, the undisputed evidence also shows Plaintiff received a copy of the proposed Fourth Amendment containing the $100,000 per year rent term on August 11, 2011. (ECF No. 133-1 at 135 (stating that the proposed Fourth Amendment is attached), 149 (including the $100,000 per year rent term); *see also* ECF No. 144 at 12 (confirming receipt).) Plaintiff responds to this evidence by arguing, "[t]his fact only shows that BLM knew of defendants' tentative proposals, but obviously not of any binding or then-effective change in rent." (ECF No. 143 at 13.) However, Plaintiff does not offer any legal support for its contention that the rent term had to become effective before it could set the 28 U.S.C. § 2415(a) limitations clock running. (*Id.*) Plaintiff again appears to attempt to sidestep the appropriate inquiry—when Plaintiff knew or had reason to know "of the injury that is the basis of the action." *Gavilan*, 849 F.2d at 1249. Plaintiff not only had reason to know—but knew—that the County intended to charge Nevada Links only $100,000 per year in ground rent as soon as Plaintiff saw the proposed Fourth Amendment. As the essence of Plaintiff's claim is that the County agreed to rent land to Nevada Links for below fair market rent, and because Plaintiff alleges $100,000 per year is far below fair market rent (ECF Nos. 1, 50), the 28 U.S.C. § 2415(a) limitations clock alternatively began running on August 11, 2011—if not earlier, as described *supra*. Plaintiff filed suit too late. (ECF No. 1 (filed September 1, 2017, or more than six years after August 11, 2011).)

In sum, Plaintiff untimely filed this case under 28 U.S.C. § 2415(a).

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

It is therefore ordered that Plaintiff's motion for partial summary judgment (ECF No. 130) is denied.

It is further ordered that Defendant County of Clark's motion for summary judgment (ECF No. 131) is granted as specified herein.

It is further ordered that Defendant Nevada Links, Inc.'s motion for summary judgment (ECF No. 134) is granted as specified herein.

It is further ordered that Defendant Nevada Links, Inc.'s administrative motion to strike (ECF No. 161) is granted as specified herein.

The Clerk of Court is directed to enter judgment accordingly, in favor of Defendants, and close this case.

DATED THIS 24th Day of February 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE