1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

COUNTY OF CLARK and NEVADA LINKS, INC.,

Defendants.

Case No. 2:17-cv-02303-MMD-BNW

ORDER

I.    **SUMMARY**

Plaintiff the United States of America sued Defendants County of Clark (the "County") and Nevada Links, Inc. for leasing the land upon which Nevada Links built the Bali Hai golf course near the Las Vegas strip to Nevada Links for allegedly below-market rent, in alleged contravention of the County's statutory, contractual, and fiduciary duties to Plaintiff. The Court previously found that Defendants were entitled to summary judgment on Plaintiff's breach of contract and fiduciary duty claims—because Plaintiff's claims were time-barred by a six-year statute of limitations (ECF No. 166 ("Prior Order"))—but the Ninth Circuit Court of Appeals reversed and remanded (ECF No. 175 ("Memorandum")), finding that Plaintiff's claims were timely.

The Court now addresses the remaining pertinent arguments in Plaintiff's renewed motion for partial summary judgment (ECF No. 130) and Nevada Links's motion for summary judgment (ECF No. 134).[1] For the reasons discussed below, the Court grants in part and denies in part Plaintiff's motion for partial summary judgment. The Court also denies Nevada Links's motion for summary judgment.

---

[1]The Court has reviewed the corresponding responses (ECF Nos. 145, 143) and replies (ECF Nos. 153, 160).

II.     **BACKGROUND**[2]

    **A. Underlying Facts**

In 1999, Plaintiff transferred 5,000 acres of vacant federal land near McCarran International Airport in Las Vegas to the County under the Southern Nevada Public Land Management Act of 1998, Pub. L. No. 105-263, 112 Stat. 2343 (1998) (the "Act"). (ECF No. 1 at 2-3.) Before then, United States Department of the Interior's Bureau of Land Management ("BLM") had administered the land. (*Id.* at 3.) The Act required the County to lease this land for fair market value. (*Id.*) The Act also required the County to pay 85% of the money it generated by leasing the land to BLM, which BLM would spend on land acquisition, conservation, and the development of parks and trails. (*Id.* at 3-4.)

In accordance with the Act, Plaintiff, through BLM, conveyed 91 acres of land to the County by a deed dated March 30, 1999 (the "Deed") that the County now leases to Nevada Links for the Bali Hai golf course. (*Id.* at 4.) Like the Act, the Deed also required the County to lease the land for fair market value and required the County to pay a portion of the proceeds to BLM. (*Id.*)

On July 20, 1999, the County agreed to lease approximately 154 acres of land to Nevada Links for the Bali Hai golf course (the "Lease"). (*Id.* at 5.) The Lease specified that the County would not receive any fixed rent payments, but would instead receive 40% of "net revenue," "defined as total revenue minus deductions for approved budgeted expenses, capital improvement expenditures, a management fee, debt service, and a reserve for maintenance and operations."[3] (*Id.* at 5.) The County and Nevada Links have amended the lease four times. (*Id.*)

In 2004, the County and BLM signed a Memorandum of Agreement (the "MOA"), which, in pertinent part, reiterated the fair market rent requirement and stated that fair

---

[2]The following facts are undisputed unless otherwise noted.

[3]The parties generally refer to these provisions as the participatory rent provisions. For convenience, the Court will as well.

market rent must be determined by one or more disinterested real estate appraisers, licensed by the State of Nevada, who perform their appraisal using widely accepted appraisal standards. (*Id.* at 4-5.)

Much of the parties' dispute centers on the County and Nevada Links' fourth amendment to the Lease (the "Fourth Amendment"), which, in pertinent part: (1) again restated that the land must be rented for fair market value; (2) switched the rent from a participatory rent agreement to a fixed rent of $100,000 per year. (*Id.* at 5-6.) The County and Nevada Links negotiated and signed the Fourth Amendment in 2011. (*Id.* at 5-7.)

On August 11, 2011, the County sent BLM a copy of the proposed Fourth Amendment for approval (ECF No. 133-1 at 135), which said the rent would be $100,000/year (*id.* at 149). (*See also* ECF No. 144 at 12.) On September 6, 2011, the County's Board of Commissioners approved the Fourth Amendment. (ECF No. 131 at 10; ECF No. 144 at 12.) That same month, the County sought BLM's explicit approval of the Fourth Amendment, but BLM eventually declined because BLM obtained an appraisal indicating that $100,000 per year was well below fair market rent. (ECF No. 131 at 11-13.) Thus began a dispute about fair market rent for the Bali Hai golf course land that eventually led to this lawsuit. (*Id.* at 12-13.)

**B. Relevant Procedural History**

Plaintiff asserts the following claims against the County: (1) breach of the Deed covenant (ECF No. 1 at 7-8); (2) breach of the MOA (*id.* at 8-9); (3) breach of fiduciary duty (*id.* at 9); and (4) declaratory judgment requiring the parties to renegotiate the Lease (*id.* at 10). Against Nevada Links, Plaintiff asserts a breach of fiduciary duty (transferee and participant) claim (*id.* at 9-10), and the same declaratory judgment claim Plaintiff asserts against the County, asking that the Court require the County and Nevada Links to renegotiate the Lease (*id.* at 10).

The Court previously denied Nevada Links' motion to dismiss Plaintiff's fiduciary duty claim asserted against it, finding in pertinent part that: (1) the Act created a trust

1  relationship between Plaintiff and the County (ECF No. 50 at 9); and (2) accepting

2  Plaintiff's factual allegations as true, Nevada Links knew or should have known the

3  County breached its fiduciary duty when it entered into the Fourth Amendment with

4  Nevada Links (*id.* at 10). The Court also previously found that Plaintiff's breach of contract

5  and fiduciary duty claims were barred by a six-year statute of limitations and accordingly

6  granted Defendants' motions for summary judgment. (ECF No. 166.)

7        On appeal, the Ninth Circuit however found that Plaintiff's claims were timely and

8  reversed and remanded the Court's summary judgment ruling. (ECF No. 175 at 1-2.) The

9  Ninth Circuit also addressed two of the County's arguments that relate to interpreting the

10  Fourth Amendment that this Court had not previously addressed: (1) that the fixed rent

11  term and the Fourth Amendment as a whole are "inoperative" and (2) that even if the fixed

12  rent term came into effect on its date of approval by the Board of County Commissioners,

13  it did not replace the participatory rent and the two rent terms were both in effect following

14  the approval date. (*Id.* at 6-7.) The Ninth Circuit held that because the Fourth Amendment

15  is ambiguous as to both arguments, these issues cannot be decided on summary

16  judgment, and therefore remanded these issues for trial. (*Id.* at 7-12.)

17        Following its order on the Ninth Circuit's mandate (ECF No. 178), the Court

18  vacated its Prior Order (ECF No. 166) and corresponding judgment (ECF No. 167) and

19  ordered the parties to file a joint pretrial order. The parties requested the Court vacate the

20  joint pretrial order deadline and schedule a virtual status conference to discuss the

21  disposition of the remaining viable issues in the parties' motions for summary judgment.

22  (ECF No. 179.) The Court granted the parties' request. (ECF No. 180.) At the status

23  conference, the Court directed the parties to file a joint status report identifying the issues

24  that remain to be resolved in each party's summary judgment briefing and stated that it

25  will delay resolution of the future damages issue until a later date, to be addressed only

26  if the parties are unable to agree upon a resolution. (ECF No. 184.) The Court now

27

28

1    addresses the remaining issues identified by the parties in their joint status report (ECF

2    No. 185).[4]

3    **III.    LEGAL STANDARD**

4          "The purpose of summary judgment is to avoid unnecessary trials when there is

5    no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

6    18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate

7    when the pleadings, the discovery and disclosure materials on file, and any affidavits

8    "show there is no genuine issue as to any material fact and that the movant is entitled to

9    judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue

10   is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could

11   find for the nonmoving party and a dispute is "material" if it could affect the outcome of

12   the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-

13   49 (1986). Where reasonable minds could differ on the material facts at issue, however,

14   summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence

15   necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to

16   resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718

17   F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253,

18   288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and

19   draws all inferences in the light most favorable to the nonmoving party. *See Kaiser*

20   *Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation

21   omitted).

22         The moving party bears the burden of showing that there are no genuine issues of

23   material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once

24   _____

25         [4]The County indicated in the parties' joint status report that it withdraws from
     consideration the only remaining issue for resolution in its renewed motion for summary
26   judgment. (ECF No. 185 at 4.) In addition, Plaintiff does not contend that any issues
     remain to be resolved in its motion for summary judgment as against the County. (*Id.* at
27   3-4.) The Court therefore need not—and does not—address any portion of the County's
     summary judgment briefing (ECF Nos. 131, 149, 155).

28                                              5

the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, *et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV.    DISCUSSION

The Court addresses both motions together below because both ask the Court to answer the same ultimate question. The Court first addresses Nevada Links's evidentiary objections and then addresses Plaintiff's and Nevada Links's arguments regarding the trust relationship between Plaintiff and the County and Nevada Links's liability.

### A.    Evidentiary Objections

Nevada Links objects to all of Plaintiff's evidence submitted in support of its motion for partial summary judgment and its opposition to Nevada Links's motion for summary judgment because Plaintiff failed to include any affidavit or declaration to authenticate its exhibits. (ECF No. 145 at 33 n.16; ECF No. 160 at 1 n.1.) Plaintiff's evidence consists of deposition transcripts, responses to interrogatories, agreements, appraisal reports,

1   County documents, emails, and letters. (ECF Nos. 130-1, 143-1.) Nevada Links also

2   objects to Plaintiff's Exhibit 16, an appraisal engagement letter from Matthew Lubawy to

3   the County, and Exhibit 24, revenue spreadsheets prepared by the County, as irrelevant.

4   (ECF No. 145 at 33 n.16.) Plaintiff counters that Federal Rule of Civil Procedure 56 no

5   longer requires authentication and that Plaintiff's Exhibits 16 and 24 are indeed relevant

6   to its claim against Nevada Links because they relate to the Fourth Amendment. (ECF

7   No. 153 at 21-22.) As further explained below, the Court agrees with Plaintiff and may

8   consider all of Plaintiff's evidence for summary-judgment purposes.[5]

9                           **1.      Authentication**

10          To argue that all of Plaintiff's evidence is not properly authenticated, Nevada Links

11  primarily relies on the standard set forth in *Orr v. Bank of America*, which strictly requires

12  evidence to be properly authenticated and admissible in its present form for it to be

13  considered at the summary-judgment stage. (ECF No. 145 at 33 n.16 (citing *Orr*, 285 F.3d

14  at 773 (9th Cir. 2002)).) However, the 2010 amendments to Federal Rule of Civil

15  Procedure 56 "eliminate[d] th[is] unequivocal requirement" and mandate only that the

16  substance of the proffered evidence would be admissible at trial. *Romero v. Nev. Dep't*

17  *of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016); *see also* Fed. R. Civ. P. 56 advisory

18  committee's note to 2010 amendment. The Court therefore agrees with Plaintiff's reading

19  of Rule 56 and will not, as Nevada Links requests, disregard Plaintiff's evidence solely for

20  lack of proper authentication because the substance of each proffered exhibit could be

21  admissible at trial. For instance, Plaintiff could reasonably call witnesses with personal

22  knowledge of its exhibits, which include, for example, appraisal reports, to testify as to

23  what each document is. (ECF Nos. 130-1, 143-1.)

24  ///

25

26

27          [5]In any case, the Court ultimately did not need to consider Plaintiff's evidence submitted in support of its motion for partial summary judgment and its opposition to Nevada Links's motion for summary judgment to reach the decision here.

28                                      7

## 2.   Relevance

Nevada Links argues that Plaintiff's Exhibits 16 and 24 (ECF Nos. 130-17, 130-25) are irrelevant to Plaintiff's claim because Nevada Links is neither a sender nor a recipient of these documents and each of the documents involve only the County and/or the United States. (ECF No. 145 at 33 n.16.) Plaintiff counters that Exhibit 16 is relevant because it demonstrates that the County worked with Plaintiff to determine the fair market value of the Bali Hai property and that Exhibit 24 is relevant because it shows that "Nevada Links had been paying rent, and that the County had been accepting rent payments, for all periods since the execution of the Fourth Amendment." (ECF No. 153 at 22.)

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." First, Exhibit 16 involves a letter that determined the scope of appraisal by Matthew Lubaway and was intended to be used by the BLM and the County in establishing fair market rent. (ECF No. 130-17 at 2.) While Nevada Links was not a sender nor recipient of the letter, the letter does tend to show the significance of determining the fair market rent and that the County had a duty to lease the property at fair market rent, which is a threshold issue that must be resolved before reaching the question of whether Nevada Links's had knowledge of a breach of that duty. Next, Exhibit 24 does involve Nevada Links, who is listed in numerous spreadsheet entries, and tends to show that Nevada Links had knowledge of its rental payments to the County, which assuming the rental payments constitute below fair-market rent, tends to go toward establishing that Nevada Links possessed knowledge of the County's breach of fiduciary duty. (ECF No. 130-25.) Accordingly, the Court finds that both Plaintiff's Exhibits 16 and 24 are relevant and may consider them in reviewing the remaining issues raised in the motions.

///

///

8

**B.     Trust Relationship Between the United States and Clark County**

Having resolved the evidentiary objections, the Court now addresses the merits of Plaintiff's and Nevada Links's arguments. Plaintiff argues that a trust relationship arose as a matter of law between the United States and the County by the Act and Deed. (ECF No. 130 at 21-22.) Nevada Links does not address this argument in its opposition nor make any arguments regarding the existence of a trust relationship in its motion for summary judgment. (ECF Nos. 145, 134.)

Whether a trust relationship exists between the United States and the County under the Act is a question of law that requires the Court to look to the common law of trusts, determine whether Congress manifested an intent to create a fiduciary relationship under the Act, and therefore look to the Act's stated purpose and enumerated duties. *See Day v. Apoliona*, 496 F.3d 1027, 1034 n.10 (9th Cir. 2007); *Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 633, 637 (10th Cir. 1998). The Court has already decided this question of law in its prior order on Nevada Links' motion to dismiss and found that Congress manifested an intent to create a trust when it passed the Act and that a trust relationship exists between the United States and the County. (ECF No. 50 at 9.) No subsequent developments in the case have persuaded the Court otherwise, and therefore, the Court continues to find that a trust relationship arose as a matter of law between the United States and the County under the Act.[6] As to this issue, the Court accordingly grants Plaintiff's renewed motion for partial summary judgment (ECF No. 130) and denies Nevada Links's motion for summary judgment (ECF No. 134).

**C.     Nevada Links's Liability**

Having established that a trust relationship exists between Plaintiff and the County, the Court now turns to the question of Nevada Links's liability. The Court first addresses Plaintiff and Nevada Links's disputes about the legal framework of liability for a breach of

---

[6]Because the Court so finds, it need not—and does not—address Plaintiff's argument that the Deed operates as another basis for finding the trust relationship.

1    a trust-based fiduciary duty, then addresses their arguments about Nevada Links's

2    liability.

3         Plaintiff argues that Nevada Links is equally liable as a transferee of and participant

4    in the County's lease of property in violation of its trust duties because Nevada Links had

5    actual or constructive knowledge of the trust created by the Act and of the County's

6    breach of that trust when it agreed to the Fourth Amendment. (ECF No. 130 at 24-26.)

7    Nevada Links affirmatively argues and counters that Nevada Links did not have actual or

8    constructive knowledge of the existence of the trust nor that the Fourth Amendment

9    breached a trust-based fiduciary duty. (ECF No. 134 at 26-28; ECF No. 145 at 22-28.) As

10   further explained below, the Court finds that only the "knowing transferee" theory of

11   liability applies here and that Nevada Links knew or should have known that a trust

12   relationship existed between Plaintiff and the County. But the Court denies summary

13   judgment because a genuine issue of material facts exists as to whether Nevada Links

14   knew of the County's alleged breach of its fiduciary duty.

15        **1.    Legal Framework**

16        Relying on standards set forth in *Harris Tr. & Sav. Bank v. Salomon Smith Barney,*

17   *Inc.*, 530 U.S. 238 (2000) and *Donovan v. Schmoutey*, 592 F. Supp. 1361 (D. Nev. 1984),

18   respectively, Plaintiff argues that Nevada Links is liable for breach of trust under two

19   distinct theories of liability: (1) as a knowing transferee of a property interest conveyed by

20   the County in breach of trust and (2) as a knowing participant in the County's breach of

21   trust. (ECF No. 130 at 24-26.)[7] Nevada Links counters that *Donovan* did not create a

22

23

24        [7]Plaintiff also cites to *Seminole Nation v. United States*, 316 U.S. 286, 295-96

25   (1942), to support its argument of a distinct "knowing participant" theory under *Donovan*,
     The Court finds this argument unpersuasive and agrees with Nevada Links that *Seminole*

26   *Nation* concerned a third party who made payments to a fiduciary for the benefit of
     beneficiaries knowing that the fiduciary intended to steal the beneficiaries' money,

27   circumstances that are not similar to nor relevant in Nevada Links's case. (ECF No. 160
     at 8 n.4.)

28

separate theory of liability but merely clarified the *Harris* formulation. (ECF No. 145 at 21-22.)

The Court agrees with Plaintiff that these may be two distinct theories of liability; however, the "knowing participant" theory under *Donovan* is functionally only distinct in cases involving liability where the third party is a participant to the breach but *not* a transferee, and therefore, the theories collapse into one in the case of a transferee. *See* 592 F. Supp. at 1396; Restatement (Second) of Trusts § 326 (1959) ("A third person who, *although not a transferee of trust property*, has notice that the trustee is committing a breach of trust and *participates* therein is liable to the beneficiary for any loss caused by the breach of trust.") (emphasis added). That is, being a transferee automatically satisfies the "participation" prong of the "knowing participation" test under *Donovan*. *See* 592 F. Supp. at 1396 ("[A]t common law, the receipt of trust assets by a third party [i.e., a transferee] resulting from a fiduciary breach constitutes sufficient participation for purposes of establishing knowing participation."). Because it is undisputed that Nevada Links is a transferee of a property interest—a leasehold interest—conveyed by the County, the Court in effect agrees with Nevada Links to the extent that only the "knowing transferee" theory of liability under *Harris* applies here. (ECF No. 130 at 10; ECF No. 134 at 13).

Under *Harris*, "when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty." 530 U.S. at 250 (2000). A transferee is liable, however, if he "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." *Id.* at 251.

### 2.    Knowledge of the Trust

As to the first prong of the "knowing transferee" standard, Plaintiff argues that Nevada Links knew of the trust because it executed the Fourth Amendment, which

1   expressly "recognizes that the Premises are within property subject to the provisions of

2   the [Act] and that County is required by the [Act] to receive 'fair market value' for all

3   leases." (ECF No. 130 at 24; ECF No. 1-5 at 11.) Nevada Links does not dispute that it

4   executed the Fourth Amendment and that the Fourth Amendment acknowledges the Act's

5   requirement that the land be conveyed at fair market value, but counters that execution

6   of such an agreement is insufficient to show knowledge that the County held the land in

7   trust. (ECF No. 145 at 22.)

8          Nevada Links argues that it had no actual knowledge that a trust relationship

9   existed because: (1) the Lease makes no reference to a trust responsibility or fiduciary

10  duty; (2) no one from the County ever communicated to Nevada Links that the County

11  was a trustee or fiduciary of the conveyed land; and (3) Plaintiff never communicated to

12  Nevada Links that the County was a trustee or fiduciary. (ECF No. 134 at 27.) Nevada

13  Links further argues that there is no evidence from which the Court could infer that

14  Nevada Links should have known of the existence of a trust relationship because: (1)

15  prior to the Court's ruling on Nevada Links's motion to dismiss, no court had determined

16  whether the Act created a trust; (2) the Deed does not state that a trust relationship was

17  intended; (3) BLM's website does not state that the Act creates a trust relationship; and

18  (4) two BLM employees who oversaw programming under the Act testified that they did

19  not believe or know whether the County was considered a trustee of the land.[8] (*Id.* at 27-

20  28.)

21         While it may be true that there were no explicit references of a "trust" or "fiduciary

22  duty" made known to Nevada Links, the Court agrees with Plaintiff that Nevada Links's

23  execution of the Fourth Amendment and its express terms sufficiently demonstrate that

24

25  _____

26  [8]However, in the portion of BLM District Manager Tim Smith's deposition testimony
    that Nevada Links cites to, Smith first stated that "Clark County has a fiduciary relationship
    with the government as it relates to the sale, the lease, or other conveyance of the lands,"

27  and when later asked whether that "make[s] the County a trustee of the lands," he
    answered, "I do not believe so." (ECF No. 134 at 28; ECF No. 135-2 at 117.)

28                                                   12

Nevada Links was aware of the County's obligation to Plaintiff to lease the property at fair market value. Such an obligation is fiduciary in nature, and therefore, the Court finds that there is no genuine dispute of material fact that Nevada Links, as a sophisticated business entity, knew or should have known that the County owed a fiduciary duty to Plaintiff and that a trust relationship existed. Accordingly, as to this issue, the Court grants Plaintiff's renewed motion for partial summary judgment (ECF No. 130) and denies Nevada Links's motion for summary judgment (ECF No. 134).

### 3.    Knowledge of the Breach of Trust-Based Fiduciary Duty

Turning to the second prong, Plaintiff argues that Nevada Links knew the rent term of the Fourth Amendment violated the trust because Nevada Links had two appraisals and a financial analysis that showed market rent exceeded $2 million and knew that the County had done no appraisal at the time of its negotiations with the County over the Fourth Amendment. (ECF No. 130 at 24-25.) On the other hand, Nevada Links argues that it did not have knowledge that the Fourth Amendment breached the trust because: (1) when the Fourth Amendment was executed, Bali Hai was $54 million underwater, had generated no rent for the County, and was projected to never generate any rent under the existing participatory rent structure; (2) the evidence reflects profound differences of opinion among appraisal experts regarding fair market value; (3) the appraisal on which Plaintiff based this lawsuit was not provided to Nevada Links and is irrelevant as a matter of law; and (4) the Act and the Deed are silent on how fair market value is determined. (ECF No. 134 at 29-35.) Consistent with the Ninth Circuit's Memorandum, the Court must decline to address Plaintiff's and Nevada Links's arguments on this issue.

In its Memorandum, the Ninth Circuit considered two arguments relating to the interpretation of the Fourth Amendment, which this Court did not reach in its Prior Order: (1) whether the fixed rent term of the Fourth Amendment went into effect and (2) if the Fourth Amendment's fixed rent term went into effect, whether it operated in tandem with, or replaced, the participatory rent term in the Lease. (ECF No. 175 at 6-7.) The Ninth

Circuit held that because the Fourth Amendment is ambiguous as to both arguments, these issues cannot be decided on summary judgment, and therefore remanded these issues for trial. (*Id.* at 7-12.) Because, as the Ninth Circuit found, these issues go toward whether there was a breach at all (*e.g.*, "if the new fixed rent term did not go into effect, … there could not have been a breach"), the question of whether Nevada Links had actual or constructive knowledge of the County's breach of fiduciary duty—and whether the Court even needs to ultimately reach that question—necessarily depends on factual findings that can only be determined at trial and cannot be answered at this stage. (ECF No. 175 at 8.) The Court therefore finds that a genuine issue of material fact exists as to Nevada Links's knowledge of the County's breach and denies the parties' motions as to this issue.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's renewed motion for partial summary judgment (ECF No. 130) is granted in part and denied in part. It is granted as to Plaintiff's claims that the Act created a trust relationship between the United States and the County and that Nevada Links knew or should have known of that trust relationship, as specified herein. It is otherwise denied.

It is further ordered that Nevada Links's motion for summary judgment (ECF No. 134) is denied.

It is further ordered that within 30 days from the date of entry of this order, Plaintiff and Defendants must file a joint pretrial order.

///

///

14

DATED THIS 13th Day of October 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE